[No. C027158. Third Dist. Oct. 27, 1999.]

UNION SAFE DEPOSIT BANK, Plaintiff and Respondent, v.
ALVIE R. FLOYD, Defendant and Appellant.

**COUNSEL**

Lillick & Charles, James S. Monroe and Eric K. Larson for Defendant and Appellant.

Steinheimer, Riggio, Haydel & Mordaunt, Kevin M. Seibert, Darin T. Judd, Daniel C. Cederborg and Robert J. Stumpf, Jr., for Plaintiff and Respondent.

**OPINION**

**HULL, J.**—Defendant debtor appeals from a deficiency judgment entered on a claim for breach of an indebtedness secured by a helicopter. Defendant contends the judgment is not supported by the evidence because, among other things, he did not received adequate notice prior to sale of the collateral. We agree and reverse.

### FACTS AND PROCEDURAL HISTORY

On December 26, 1991, William C. Moore Helicopter Services (the partnership), a general partnership composed of William C. Moore (Moore), David Le Beouf, Peter Marek, and defendant Alvie Floyd (Floyd), borrowed $241,110 from plaintiff Union Safe Deposit Bank (the Bank). In connection with the loan, the partnership issued an installment note signed by all four partners and the Bank took a security interest in a 1979 Bell 206BIII helicopter (the helicopter) owned by the partnership. On February 12, 1993, the debt was refinanced, with the partnership executing a new installment note signed by Floyd, Moore, and Lyle Coe, a new partner.

The loan went into default in November 1993 and the Bank repossessed the helicopter. On August 12, 1994, the Bank sent, by certified mail, to the partnership and each partner, including Floyd, a notice of intention to sell the helicopter (the notice). The notice, entitled "NOTICE OF INTENTION TO SELL AND RIGHT TO REDEEM REPOSSESSED MOTOR VEHICLE," read, in relevant part: "NOTICE IS HEREBY GIVEN of the undersigned's intent to sell the repossessed motor vehicle at the expiration of 5 days from the date this notice was mailed . . . and 'by private or public sale whichever deems [*sic*] necessary at redemption address at close of business day.'" The notice further described the debtor's right to redeem within this five-day period. Finally, the notice warned that the debtor is "subject to suit and liability if the amount obtained upon sale of the vehicle is insufficient to pay the contract balance and any other amounts due."

On August 15, a postal employee attempted, unsuccessfully, to deliver the notice to Floyd. A note was left in Floyd's mailbox informing him of the availability of the notice at the post office. An additional note to this effect was left in Floyd's mailbox on August 27. Defendant never came to pick up the notice and it was returned to the Bank on September 4.

Meanwhile, on August 18, the notice was sent to Big Valley Aviation, a company claiming a mechanic's lien on the helicopter. At the time, Floyd was the president of Big Valley Aviation.

The Bank hired Kenneth Yunker to sell the helicopter. Yunker inspected the machine and its log book and informed the Bank that "[a]ll the airframe had been maxed out, all the engine time ha[d] been maxed out . . . ." Yunker also noted a problem with the "chip light" on the helicopter, indicating the possibility of "[m]ajor engine problems."[1] Yunker informed the Bank a complete inspection would cost between $7,000 and $10,000 and estimated the cost of repair to be $100,000.

The Bank hired Paul Wiemer to appraise the helicopter in preparation for sale. Wiemer found the helicopter to be in "poor" condition. Based on an "aircraft price bluebook" value for the helicopter if it had been in good condition and the projected cost of repairs, Wiemer arrived at a value of $79,000.

The Bank decided to sell the helicopter in its present, uncertain condition without incurring further expense for examination or repair. Yunker advertised the helicopter for sale and received approximately 20 inquiries as well as some telephone calls. Three bids were submitted and the helicopter was eventually sold for $80,500.

On March 14, 1995, the Bank sued Floyd and others for breach of the installment note. The matter was tried to a jury, which returned a special verdict finding, among other things, that the helicopter had been sold in good faith and in a commercially reasonable manner. Judgment was entered for the Bank in the amount of $239,122.59. Floyd appeals.

## DISCUSSION

■■■ California Uniform Commercial Code section 9504, subdivision (3), states in relevant part: "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor . . . a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his or her address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party . . . at least five

---

[1] According to the testimony at trial, a "chip light" or "chip plug" is used to detect whether a bearing is coming apart in the engine. Pieces of metal breaking off a bearing will collect on the plug, which is magnetized, and eventually create a metallic bridge. This completes a circuit, thereby illuminating the chip light. Once the light comes on, the aircraft should be brought down and inspected.

days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made." (Further section references are to the California Uniform Commercial Code unless otherwise designated.)

■ " 'The purpose of notice is to give the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser, or to see that the sale is conducted in a commercially reasonable manner.' [Citations.]" (*Bank of America* v. *Lallana* (1998) 19 Cal.4th 203, 214 [77 Cal.Rptr.2d 910, 960 P.2d 1133].) Failure to comply with this notice requirement results in the loss of any right to a deficiency judgment. (*Canadian Commercial Bank* v. *Ascher Findley Co.* (1991) 229 Cal.App.3d 1139, 1149 [280 Cal.Rptr. 521]; *Rutan* v. *Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 971 [219 Cal.Rptr. 381].)

■ Floyd contends the Bank failed to comply with its statutory notice requirement in several ways. First, he argues the Bank was required to notify each partner individually and to attempt a second notification when the first proved unsuccessful. Next, he argues the notice itself was deficient in failing to specify whether the sale would be public or private and, as to the eventual private sale, failing to state the helicopter would be sold *on or after* a particular date. Finally, he argues the notice incorrectly described his redemption rights.

Without addressing the sufficiency of the Bank's efforts to serve Floyd with the notice of sale, we agree the content of the notice was deficient. The notice expressed the Bank's intent to sell the helicopter "at the expiration of 5 days from the date this notice was mailed" " 'by private or public sale . . . at redemption address at close of business day.' " As we shall explain, this notice was insufficient to satisfy section 9504, subdivision (3), and was defective in failing to specify the nature of the intended sale.

Although the issue has not arisen in this state, the courts in several other jurisdictions have held that a failure to indicate in the notice whether the sale will be public or private renders the notice defective. (See *Davis* v. *Huntsville Production Credit Assn.* (Ala. 1985) 481 So.2d 1103, 1107; *Benton-Lincoln Credit Service, Inc.* v. *Giffin* (1980) 48 Or.App. 559 [617 P.2d 662, 664]; *Liberty Nat. Bank of Fremont* v. *Greiner* (1978) 62 Ohio App.2d 125 [405 N.E.2d 317, 321]; *Aimonetto* v. *Keepes* (Wyo. 1972) 501 P.2d 1017, 1019; *Citizens State Bank* v. *Sparks* (1979) 202 Neb. 661 [276 N.W.2d 661, 663-664]; *Simmons Machinery Co., Inc.* v. *M & M Brokerage, Inc.* (Ala. 1981) 409 So.2d 743, 750; contra, *Fidelity Consumer Discount Co.* v. *Clark* (1984) 333 Pa.Super. 306 [482 A.2d 580, 581-582].) Although the decisions from these sister states are not directly on point, inasmuch as the statutes at

issue conform to the Uniform Commercial Code's requirement of *reasonable notice*[2] whereas section 9504, subdivision (3), contains a specific notice requirement (see *In re Carter* (9th Cir. 1975) 511 F.2d 1203, 1204), they are nevertheless instructive. If notice which fails to indicate whether the sale will be public or private is not reasonable notice, it can hardly be said to satisfy a specific notice requirement.

Other decisions have held that a failure to state whether the sale will be public or private is not fatal. However, in those cases the notice otherwise contained sufficient information from which this could be ascertained. (See, e.g., *Lake Shore Nat. Bank* v. *McCann* (1979) 78 Ill.App.3d 580 [33 Ill.Dec. 577, 396 N.E.2d 1301, 1305] [notice which said sale would be held "at 605 North Michigan Avenue, Chicago, Illinois on July 1, 1975 at 9 a.m." was deemed to be notice of a public sale]; *All-States Leas. Co.* v. *Ochs* (1979) 42 Or.App. 319 [600 P.2d 899, 906] [notice which indicated several offers had been received and creditor would sell at highest offer if no reply was received from debtor within 10 days was deemed to be notice of a private sale].)

The notice here does not contain sufficient information to ascertain with specificity the type of sale the Bank intended to undertake. Section 9504, subdivision (3), requires notice of "the time and place of any public sale" or "the time on or after which any private sale . . . is to be made." The Bank's notice indicated the sale would be "at the expiration of 5 days from the date this notice was mailed . . . at redemption address at close of business day." This arguably suggests either a public or a private sale. It specifies the time and place of a possible public sale, i.e., five days from the date of notice, at the close of the business day, at the redemption address. It also may be read to indicate the date after which a private sale will take place. Although the words "on or after" are not used, such meaning may be taken from the words "at the expiration of 5 days from the date this notice was mailed." It does not say the sale will take place *on* the fifth day but rather *at the expiration of* five days.

California law mandates strict compliance with the notice requirement of section 9504, subdivision (3). (See *Canadian Commercial Bank* v. *Ascher Findley Co.*, *supra*, 229 Cal.App.3d at p. 1149; *C.I.T. Corp.* v. *Anwright Corp.* (1987) 191 Cal.App.3d 1420, 1423-1424 [237 Cal.Rptr. 108]; *Ford*

---

[2]Section 9-504, subdivision (3), of the Uniform Commercial Code reads in relevant part: "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification* of the time and place of any public sale or *reasonable notification* of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . ." (4 White & Summers, Uniform Commercial Code (4th ed. 1995) § 34-10, fn. 2, p. 430, italics added.)

*Motor Credit Co.* v. *Price* (1985) 163 Cal.App.3d 745, 748-751 [210 Cal.Rptr. 17].) ██ "Notice to the debtor is the mechanism that the Legislature and the drafters of the Uniform Commercial Code chose to ensure that sales of collateral are conducted in a commercially reasonable fashion. Notice serves this purpose by giving the debtor an opportunity to monitor the sale to ensure its commercial reasonableness. [Citations.] The right to a deficiency judgment is conditional and depends on strict compliance with the statutory requirements. As the court states in *Atlas Thrift Co.* v. *Horan* [(1972)] 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315, 59 A.L.R.3d 389], '[t]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment.' " (*Backes* v. *Village Corner, Inc.* (1987) 197 Cal.App.3d 209, 215-216 [242 Cal.Rptr. 716].)

██ In enacting section 9504, "[t]he Legislature rejected the Uniform Commercial Code's version . . . which requires only 'reasonable notification of the time and place of any public sale'—because the Uniform Commercial Code 'does not specify either the manner in which notice must be given or the time within which it must be given.' (Sen. Fact Finding Com. on Judiciary, Sixth Progress Rep. to Leg., pt. 1 (1959-1961) Cal. U. Com. Code, p. 426.) The Senate Committee pointed out that the Uniform Commercial Code's general requirement 'that every aspect of the sale be done in "a reasonably commercial" manner is too vague a requirement to be of any value and . . . an invitation to litigation.' (*Ibid.*) These concerns led our Legislature to conclude that 'both the time and manner of giving notice should be specified, otherwise every sale is open to attack.' (*Ibid.*) Accordingly, California Uniform Commercial Code section 9504, subdivision (3) defines in detail the notice requirements for both public and private sales: A notice of *public* sale informs the debtor of the time and place of sale. A notice of *private* sale requires only that the debtor be told the collateral will be sold after the expiration of a certain period." (*Bank of America* v. *Lallana, supra,* 19 Cal.4th at p. 212.) If we were to apply a standard permitting substantial compliance, "we would be inviting exactly the kinds of complications which the Legislature intended to avoid." (*Ford Motor Credit Co.* v. *Price, supra,* 163 Cal.App.3d at pp. 750-751.)

California law requires strict compliance with the notice requirement. The purpose of this notice requirement is to alert the debtor of the need to take steps to protect his or her interests. In this regard, the California Uniform Commercial Code does not permit the creditor to leave the debtor guessing regarding the type of sale contemplated. If a public sale is intended, notice of the time and place informs the debtor of the deadline for curing the default and, in the alternative, permits the debtor to arrange for someone to be

present at the auction, either himself or another, to bid up the price. If a private sale is intended, notice of the date after which it will occur provides a minimum deadline for curing the default. The debtor may thereafter continue curative efforts until the collateral is sold and monitor the creditor's attempts to sell the collateral to assure commercial reasonableness.

We conclude the Bank's notice was defective in failing to state, expressly or impliedly, whether the sale would be public or private and therefore the Bank failed to comply with the specific notice requirements of section 9504, subdivision (3). The Bank is precluded therefore from obtaining a deficiency judgment.[3]

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court with directions to enter an order granting Floyd's motion for judgment notwithstanding the verdict and to enter judgment for Floyd on the Bank's complaint. Floyd shall receive his costs on appeal.

Sims, Acting P. J., and Callahan, J., concurred.

On November 3, 1999, the opinion was modified to read as printed above.

---

[3]Having so concluded, we need not address the Bank's contention it was not required to give Floyd notice individually because it was enough that notice was given to the partnership or the other partners. If the content of the notice to Floyd was deficient, it was similarly deficient as to the other partners. We also need not address Floyd's contention the court erred in admitting evidence of his financial condition.