**BOULEVARD BANK, Respondent,**

v.

**Herb MALOTT, Appellant.**

**No. WD 74917.**

Missouri Court of Appeals,
Western District.

Jan. 29, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied March
5, 2013.

Application for Transfer Denied
May 28, 2013.

Dale K Irwin, Slough Connealy Irwin & Madden LLC, Kansas City, MO, Matt Wilson, Columbia, MO, Dave Angle, Angle Wilson Law LLC, Columbia, MO, for appellant.

Howard A. Wittner, David VonGontard, St. Louis, MO, for respondent.

Before Division Three: ALOK AHUJA, P.J., and VICTOR C. HOWARD and CYNTHIA L. MARTIN, JJ.

ALOK AHUJA, Judge.

Herb Malott appeals from a judgment dismissing his claim that Boulevard Bank failed to comply with statutory notice requirements before selling Malott's automobile, in which the Bank held a security interest. Because the Bank's pre-sale notice failed to adequately advise Malott of the method of intended disposition of the vehicle, as required by §§ 400.9–613 and .9–614,[1] we reverse, and remand the case to the circuit court for further proceedings.

### Factual and Procedural Background

On September 19, 2007, Malott and the Bank entered into a Promissory Note and Security Agreement to finance Malott's purchase of a 1992 BMW M5 automobile. The original principal amount of the Note was $9,502.50.

Based on its contention that Malott had defaulted on the Note, the Bank repossessed the car in January 2009. Following repossession, the Bank sent Malott a notice letter dated March 19, 2009. The Bank's letter stated that the Bank had repossessed Malott's vehicle, and that the estimated total amount due on the Note (including unpaid principal and interest, as

---

1. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2012 Cumulative Supplement.

well as "[r]epossession expenses, etc.") was $6,395.14. The notice stated that "[t]he collateral will be sold at a public/private sale if the Total Amount Due is not received by April 9, 2009." The letter advised Malott that he had the right to redeem the vehicle "at any time prior to the sale by paying the entire amount due," and that he would be personally liable for any deficiency between the vehicle's sale price and the total amount due the Bank.

Malott did not redeem the vehicle and the Bank sold it. The Bank then sued Malott for a deficiency judgment in the Circuit Court of Cooper County, claiming that it was owed $3,195.14, plus interest, costs, and attorneys' fees. Malott's Answer admitted entering into the Promissory Note and Security Agreement, and that the Bank had repossessed and sold his car. His Answer denied, however, that he was in default on the Note, or that any deficiency was owed to the Bank. Malott's Answer also asserted a counterclaim, alleging that the Bank's pre-sale notice failed to meet the requirements of §§ 400.9–613 and .9–614, and that he was accordingly entitled to statutory damages under § 400.9–625(c)(2). Malott's counterclaim sought certification as a class action, based on his allegation "that Boulevard Bank regularly repossesses and sells collateral and has failed, and continues to fail, to follow the UCC's presale notice requirements in connection with such repossessions and sales."

The Bank moved to dismiss Malott's counterclaim on July 11, 2011, contending that he had failed to state a claim upon which relief could be granted because its pre-sale notice satisfied all statutory requirements. The circuit court granted the Bank's motion to dismiss on October 28, 2011. Although the case was set for trial on the Bank's Petition seeking a deficiency judgment, the Bank voluntarily dismissed

its affirmative claim without prejudice on January 11, 2012. Malott now appeals the circuit court's dismissal of his counterclaim.

## Standard of Review

The standard of review for a circuit court's grant of a motion to dismiss is *de novo*. A motion to dismiss for failure to state a claim on which relief can be granted is an attack on the plaintiff's pleadings. Such a motion is only a test of the sufficiency of the plaintiff's petition. The facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs. The court makes no effort to weigh the credibility and persuasiveness of the facts alleged. Rather, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. In order to survive the motion, the petition must invoke substantive principles of law entitling plaintiff to relief and ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial. *In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. banc 2012) (citations and internal quotation marks omitted).

## Discussion

### I.

■ Because "[w]e have a duty to determine *sua sponte* whether we have jurisdiction over [Malott's] appeal," *Melson v. Traxler*, 356 S.W.3d 264, 268 n. 9 (Mo.App. W.D.2011), we begin by addressing appellate jurisdiction.

■ The trial court dismissed Malott's counterclaim without specifying whether the dismissal was entered with or without prejudice. Given the court's silence, the dismissal is presumed to be

without prejudice by operations of Rules 67.03 and 67.04. "[T]he general rule is that a dismissal without prejudice is not a final judgment from which an appeal may be taken," because the dismissal leaves the claimant free to re-assert his claim. *BH Holdings, LLC v. Bank of Blue Valley*, 340 S.W.3d 340, 342 (Mo.App. W.D.2011). A dismissal without prejudice *is* appealable, however, where "the dismissed party will be unable to maintain their action in the court where the action was filed presuming the reason for dismissal was proper." *Palisades Collection, LLC v. Watson*, 375 S.W.3d 857, 860 (Mo.App. W.D.2012).

■ Here, the trial court gave no reason for its dismissal of Malott's counterclaim, and we therefore presume that the trial court acted for the reasons stated in the motion to dismiss. *Id.* The Bank's motion to dismiss argued that Malott's counterclaim failed to state a claim because the Bank's pre-sale notice (which was attached to Malott's Answer, and incorporated by reference in the counterclaim) complied with all relevant statutory requirements; the Bank did not argue that the manner in which Malott pleaded his counterclaim was somehow defective. Therefore, we presume that the trial court's dismissal of the counterclaim was based on its determination that the Bank's notice was legally sufficient. This ruling would prevent Malott from re-asserting his claim that the Bank violated the notice requirements of §§ 400.9–613 and .9–614.[2] The circuit court's dismissal was accordingly appealable, despite the fact that it was entered without prejudice.

**2.** Given the presumed basis for the trial court's dismissal, the court's ruling determined a substantive element of Malott's counterclaim, and was tantamount to a grant of judgment on the pleadings. Because, however-er characterized, the trial court's dismissal found the Bank's pre-sale notice to be legally

**II.**

Malott alleges that the Bank's March 19, 2009 notice was deficient in multiple respects. We need only address one of his claims: that the notice failed to specify the method by which the Bank intended to dispose of his repossessed vehicle.

**A.**

Missouri law provides that, "[a]fter default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." § 400.9–610(a). With exceptions not relevant here, "a secured party that disposes of collateral under section 400.9–610 shall send to [the debtor and certain other interested persons] a reasonable authenticated notification of disposition." § 400.9–611(b).

Section 400.9–614 provides that, in a consumer-goods transaction like this one,

(1) A notification of disposition must provide the following information:

(A) The information specified in section 400.9–613(1);

(B) A description of any liability for a deficiency of the person to which the notification is sent;

(C) A telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9–623 is available; and

(D) A telephone number or mailing address from which additional infor-

sufficient, its ruling "may be res judicata of what the judgment actually decided," permitting this appeal notwithstanding that the dismissal was without prejudice. *Doe v. Visionaire Corp.*, 13 S.W.3d 674, 676 (Mo.App. E.D.2000).

mation concerning the disposition and the obligation secured is available....

Section 400.9–614(1)(A) incorporates the notice requirements found in § 400.9–613(1). That section provides:

The contents of a notification of disposition are sufficient if the notification:

(A) Describes the debtor and the secured party;

(B) Describes the collateral that is the subject of the intended disposition;

(C) States the method of intended disposition;

(D) States the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

(E) States the time and place of a public disposition or the time after which any other disposition is to be made....

■■■ Section 400.9–614(2) specifies that "[a] particular phrasing of the notification is not required." Nevertheless, "[a] notification that lacks any of the information set forth in [§ 400.9–614(1)] is insufficient as a matter of law." § 400.9–614, comment 2. "A creditor is held to the requirement of strict compliance with these notice provisions. Any doubt about what constitutes strict compliance is resolved in the debtor's favor." *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 92 (Mo.App. W.D.2008) (citations omit-

ted); *see also States Res. Corp. v. Gregory*, 339 S.W.3d 591, 596 (Mo.App. S.D.2011).

The purpose of statutory notice is to apprise a debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest. Proper notice provides the debtor the opportunity to: (1) discharge the debt and reclaim the collateral, (2) find another purchaser, or (3) verify that the sale is conducted in a commercially reasonable manner.

*States Res.*, 339 S.W.3d at 596 (citations, footnote, and internal quotation marks omitted).

**B.**

■■■ Under § 400.9–613(1)(C), a lender's pre-sale notice must "[s]tate[ ] the method of intended disposition" of the collateral securing a loan. In this case, the Bank's notice stated that "[t]he collateral will be sold at a public/private sale if the Total Amount Due is not received by April 9, 2009."

Public and private sales of collateral are significantly different methods of disposition, and are subject to materially different notice requirements. Comment 7 to § 400.9–610 explains that "a 'public disposition' is one at which the price is determined after the public has had a meaningful opportunity for competitive bidding."[3] "A private sale, by contrast, is not open to the general public, usually does not occur at a pre-appointed time and place, and may or may not be generally advertised."

---

**3.** This appears to be generally consistent with the definition of a "public sale" under prior law. *See Bank of Houston v. Milam*, 839 S.W.2d 705, 708 (Mo.App. S.D.1992) ("A public sale requires notice or an invitation to the public to bid, allows the public to engage in competitive bidding, and occurs at a public place or a place accessible to the public."). *Boatmen's Nat'l Bank of Carthage v. Eidson*, 796 S.W.2d 920 (Mo.App. S.D.1990), cited in

*Milam*, held that a "public sale" requires an auction in which bidders have "knowledge of the highest bid with an opportunity to bid higher." *Id.* at 923. *Eidson* found that this definition was not satisfied where a lender advertised an item in a general-circulation newspaper, for sale to the person submitting the highest sealed bid before a specified time. *Id.* at 923. We need not decide whether the same result would apply under current law.

4 J.J. White & R.S. Summers, UNIFORM COMMERCIAL CODE § 34–11, at 474 (6th ed.2010) (footnote omitted). With respect to a public sale, the notice must "[s]tate[ ] the time and place of a public disposition," while for a private sale, the notice need only inform the debtor of "the time after which any other disposition is to be made." § 400.9–613(1)(E).

In this case, the Bank's notice letter advised Malott that the Bank intended to sell his car in *either* a public or a private sale. The Bank's notice failed to satisfy § 400.9–613(1)(c), because it failed to identify the specific method by which it intended to dispose of the collateral.

In *Thong v. My River Home Harbour, Inc.*, 3 S.W.3d 373 (Mo.App. E.D.1999), a secured lender informed the debtor that, if the debtor failed to cure a default on a loan agreement, the creditor "will take possession of the boat [securing the loan] and exercise its rights, including the sale of the boat, under the Retail Installment Contract." *Id.* at 376. The Court held that this notice, which informed the debtor only of a potential "sale", was deficient. It explained:

> The letter in the instant action did not inform Thong of the precise disposition My River Home intended to make of the boat. Although Thong was informed that a sale was possible, the letter gave him no way of knowing either whether a sale was actually planned or what type of sale My River Home intended to con-

duct. In order to protect his interest in the boat, to redeem if possible, and to insure the commercial reasonableness of the disposition, Thong should have been informed of the disposition My River Home intended to make of the boat. Without this basic information, Thong's ability to protect his interest in the boat was hampered and the purpose of the notice provision of [the predecessor to current §§ 400.9–613 and .9–614] was not met.

*Id.* at 378.[4]

Similarly, *In re Downing*, 286 B.R. 900 (Bankr.W.D.Mo.2002), held that a notice was deficient where it merely informed a debtor that the secured creditor "intends to sell the vehicle as allowed under state law, but no sooner than 10 days after the date of this letter." *Id.* at 904. The vehicle was ultimately sold in a private sale. *Id.* The creditor argued that its notice was sufficient for a private sale, since, in a private sale, "it was not required to provide Mr. Downing with the exact time and place of the auction." *Id.* The court rejected this argument and found the notice deficient. It held that §§ 400.9–613 and .9–614 "clearly required [the creditor] to inform Mr. Downing as to whether it would sell the car at either a private sale or public sale"; because the creditor's notice "did not inform him of the type of sale contemplated," it failed to strictly comply with the statutory notice requirements. *Id.*[5]

**4.** *Thong* was decided under § 400.9–504, RSMo 2000. We have previously held that cases applying this predecessor statute are relevant to determining a secured creditor's notice obligations under §§ 400.9–613 and .9–614. *See States Res.*, 339 S.W.3d at 596 n. 4; *Mancuso*, 254 S.W.3d at 94 n. 5.

**5.** In light of *Downing*, we reject the Bank's argument that its pre-sale notice was sufficient, assuming a private sale was ultimately held. Whether or not the Bank's notice pro-

vided the information which §§ 400.9–613(1)(E) requires in the event of a private sale, the notice failed to inform Malott, specifically and unambiguously, that a private sale would in fact be conducted. *See also, e.g., Davis v. Huntsville Prod. Credit Ass'n*, 481 So.2d 1103, 1107 (Ala.1985) ("the notice must identify whether the sale is public or private, *in addition to meeting the time and place requirements*" (emphasis added)); *Hertz Comm'l Leasing Corp. v. Dynatron, Inc.*, 37

We recognize that in *Thong* and *Downing*, the creditors' pre-sale notice letters referred only to a "sale" of the collateral, or of the creditor's intent "to sell" it. Here, by contrast, the Bank's notice referred to "a public/private sale." But this is a distinction without a difference: "public" and "private" sales define the entire universe of possible sale transactions (indeed, a "private" sale is frequently defined to be any sale which is *not "public"*). Thus, by referring to a "public/private sale," the Bank told Malott nothing more than that the property would be sold. The phrase "public/private" added nothing, because it excluded nothing. *Thong* and *Downing* are directly relevant here.

Like *Thong* and *Downing*, cases from other jurisdictions hold that pre-sale notices which merely refer to a "sale" of collateral, or which refer to the possibility of either a public or private sale, are deficient under §§ 9–613 and 9–614 of the Uniform Commercial Code, or their predecessor provision. For example, in *Union Safe Deposit Bank v. Floyd*, 76 Cal. App.4th 25, 90 Cal.Rptr.2d 36 (1999), a secured creditor informed the debtor that the creditor intended to sell a repossessed helicopter " 'by private or public sale whichever [it] deems necessary.' " *Id.* at 37. The California Court of Appeal held

that this notice failed to comply with the creditor's statutory notice obligations, and explained:

> The purpose of this notice requirement is to alert the debtor of the need to take steps to protect his or her interests. In this regard, *the California Uniform Commercial Code does not permit the creditor to leave the debtor guessing regarding the type of sale contemplated.* If a public sale is intended, notice of the time and place informs the debtor of the deadline for curing the default and, in the alternative, permits the debtor to arrange for someone to be present at the auction, either himself or another, to bid up the price. If a private sale is intended, notice of the date after which it will occur provides a minimum deadline for curing the default. The debtor may thereafter continue curative efforts until the collateral is sold and monitor the creditor's attempts to sell the collateral to assure commercial reasonableness.

*Id.* at 40–41 (emphasis added). Other decisions have similarly held that a pre-sale notice which does not specify whether a public or a private sale will be conducted fails to comply with the Uniform Commercial Code's notification requirements.[6]

Conn.Supp. 7, 427 A.2d 872, 876 (1980) (New York law) (although "[t]he notice, itself, . . . met all the requirements of a public sale notice" (by listing the date, time, and location of the sale), notice was deficient where it "does not refer specifically either to a public or private sale"); *Liberty Nat'l Bank of Fremont v. Greiner*, 62 Ohio App.2d 125, 405 N.E.2d 317, 321 (1978) (even though "the written notice received by [the debtor] did contain the necessary information" for a disposition by private sale, notice insufficient where "read as a whole the notice indicated that a public sale would be held").

**6.** *See, e.g., Landmark First Nat'l Bank of Fort Lauderdale v. Gepetto's Tale O' the Whale of Fort Lauderdale, Inc.*, 498 So.2d 920, 922

(Fla.1986) (notice deficient where it "did not specify whether the sale was to be public or private"); *Davis v. Huntsville Prod. Credit Ass'n*, 481 So.2d 1103, 1107 (Ala.1985) ("the notice must identify whether the sale is public or private, in addition to meeting the time and place requirements; the law will not put the debtor in the perilous position of interpreting a vague notice"); *Benton–Lincoln Credit Serv., Inc. v. Giffin*, 48 Or.App. 559, 617 P.2d 662, 664–65 (1980); *Hertz Commercial Leasing Corp. v. Dynatron, Inc.*, 37 Conn. Supp. 7, 427 A.2d 872, 876 (1980) (notice which did not specifically refer to either a public or a private sale was "ambiguous, misleading and confusing"); *Liberty Nat'l Bank of Fremont v. Greiner*, 62 Ohio App.2d 125,

One of the explicitly stated purposes of Missouri's Uniform Commercial Code, which we are instructed to promote in interpreting its provisions, is "to make uniform the law among the various jurisdictions." § 400.1–102(2)(c). Given this legislative statement of purpose, "court decisions from other jurisdictions can be instructive, particularly where there is a dearth of Missouri case law interpreting the provision in question." *Mancuso,* 254 S.W.3d at 94 (citing *Dean Mach. Co. v. Union Bank,* 106 S.W.3d 510, 517 (Mo.App. W.D.2003)). The result we reach is bolstered by the fact that courts in other States have rejected pre-sale notices similar to the Bank's.

By failing to inform Malott whether it intended to sell the repossessed car by way of a public sale, or instead by means of a private sale, the Bank failed to notify him of "the method of intended disposition" of the vehicle, as required by §§ 400.9–613(1)(C) and .9–614(1)(A). By failing to inform him of the type of sale it intended to conduct, the Bank denied him a full opportunity to protect his interest in the vehicle, and his interest in ensuring that any sale achieved the highest price, and was otherwise conducted in a commercially reasonable manner. The circuit court erred in finding the Bank's notice to be sufficient.

Citing *Colonial Pacific Leasing Corp. v. Elite S–W Mo., Inc.,* No. 6:09–CV–3154–RED, 2010 WL 3119448 (W.D.Mo. Aug. 4, 2010), the Bank argues that, even if its reference to a "public/private sale" was deficient, that deficiency was minor, and not seriously misleading. The Bank argues that its notice was accordingly sufficient, even if imperfect. But, in citing to *Colonial Pacific Leasing,*

the Bank fails to recognize the distinction in pre-sale notice requirements between consumer and non-consumer transactions. In non-consumer transactions, "[t]he contents of a notification providing substantially the information specified in [§ 400.9–613(1) ] are sufficient, even if the notification includes ... [m]inor errors that are not seriously misleading...." § 400.9–613(3)(A). But § 400.9–613 itself specifies that its notification requirements apply "[e]xcept in a consumer-goods transaction...." By contrast, an official comment to § 400.9–614, which *does* apply to consumer-goods transactions, specifies that "[a] notification that lacks any of the information set forth in [§ 400.9–614(1) ] is *insufficient as a matter of law.*" § 400.9–614, comment 2 (emphasis added). The comment *contrasts* the legal standard applicable in consumer transactions—where omissions of required information render the notice "insufficient as a matter of law"—with the standard applicable in non-consumer transactions subject to § 400.9–613, "under which the trier of fact may find a notification to be sufficient even if it lacks some information listed in paragraph (1) of that section." *Id.* Section 400.9–613(3)(A), which forgives "minor errors" in a pre-sale notice "that are not seriously misleading," is inapplicable to a consumer-goods transaction like this one. *See States Res.,* 339 S.W.3d at 597 (rejecting creditor's similar attempt to rely on standards stated in §§ 400.9–613(2) and (3) in case involving consumer goods); 4 J.J. White & R.S. Summers, UNIFORM COMMERCIAL CODE § 34–12, at 489 (6th ed.2010) ("The not 'seriously misleading' safe harbor in 9–613(3) does not apply in consumer cases. The notice must be correct in all the required information.").

405 N.E.2d 317, 321 (1978) (notice which referred to possibility of both public or private sale was "inherently misleading").

The Bank also argues that, because Malott does not argue that the Bank's sale of the BMW was commercially unreasonable, any defects in its pre-sale notice could not have been prejudicial to Malott, and those deficiencies therefore cannot give rise to a cause of action. But this Court has previously held that "[c]ommercial reasonableness and notice are distinct requirements.... [E]ven if the debtor concedes that a commercially reasonable sale was held, a creditor must prove it gave notice to the debtor in its own right." *Thong*, 3 S.W.3d at 377 (citing *Textron Fin. Corp. v. Trailiner Corp.*, 965 S.W.2d 426, 431 (Mo.App. S.D.1998)). In addition, in *Mancuso* we held that a debtor alleging that pre-sale notice was deficient need not establish any actual damage, because § 400.9–625(c)(2) " 'provides a minimum, statutory, damage recovery for a debtor' independent of a showing of damage. It is 'designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted.' " 254 S.W.3d at 92 (quoting § 400.9–625, comment 4). The fact that Malott does not challenge the commercial reasonableness of the sale the Bank ultimately conducted does not affect the viability of his claim for statutory damages based on defects in the Bank's pre-sale notice.

### Conclusion

Because the circuit court erred in dismissing Malott's counterclaim for failure to state a claim, its judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

All concur.