**REVERSE and REMAND and Opinion Filed July 5, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-20-00704-CV**
_____

**LORY K. WILSON, GREGORY S. VENABLE, AND JAMES B. JOHNSON,**
**Appellants**
**V.**
**CAPITAL PARTNERS FINANCIAL GROUP USA, INC. AND BTH BANK,**
**NATIONAL ASSOCIATION, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-09275**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Partida-Kipness

Appellants appeal a summary judgment in favor of appellees on claims arising

from the breach of an equipment-lease agreement and associated personal

guarantees. Appellants contend the trial court erred in granting summary judgment

because appellees failed to give proper notice before selling appellants' collateral.

We reverse the trial court's judgment and remand for further proceedings.

# BACKGROUND

In August 2016, appellee Capital Partners Financial Group USA, Inc. agreed to lease medical equipment to Fast Lane Emergency Room, LLC. Appellants each signed personal guarantees on the lease.[1]

The same month, Capital Partners executed a promissory note for $1.8 million with appellee BTH Bank, National Association. Capital Partners later executed an additional note with BTH for $140,000. To secure the notes, Capital Partners granted BTH a security interest in the lease and other assets. Capital Partners also assigned the lease to BTH.

In October 2017, Fast Lane stopped making lease payments. Capital Partners sent notices of default to appellants in January, February, and June 2018.

On June 20, 2018, Capital Partners' president Michael Austin sent an e-mail to appellants stating Capital Partners' intent to repossess and sell property located in Fast Lane's clinic. The e-mail stated that Capital Partners had hired Advantage Healthcare Associates to inventory, remove, and sell "all the permissible equipment" from Fast Lane's clinic. Austin further noted that Capital Partners had already "received a few bids . . . [m]ainly for the CT and radiology equipment." Advantage Healthcare removed and sold the equipment. According to Austin, the accelerated

---

[1]Rick L. Miller also executed a personal guarantee, and he was a named defendant in this case and filed a notice of appeal from the trial court's judgment. However, he did not file a brief, and we dismissed his appeal.

balance due under the lease was $1,768,500. After applying the net proceeds from the collateral sale, the remaining balance due at that time was roughly $1.6 million.

Capital Partners sued appellants as guarantors of the lease, seeking to recoup the deficiency. Capital Partners brought claims for theft of service, fraud, breach of contract, and quantum meruit. BTH intervened in the suit, alleging that Capital Partners had defaulted on its loans, which were secured by the lease. Thus, BTH sought recovery from both Capital Partners and appellants for amounts due on the loans.

Capital Partners moved for summary judgment on its contract claim and eventually nonsuited its other claims. BTH moved for summary judgment on the grounds that it was the beneficiary of Capital Partners' notes and appellants' guarantees, all of which were in default.

Appellant Lory K. Wilson moved for summary judgment on Capital Partners' contract claim on the grounds that Capital Partners failed to provide adequate notice of the sale of the collateral as required by the Uniform Commercial Code (UCC). Appellants James B. Johnson and Gregory S. Venable moved for summary judgment by incorporating Wilson's motion.

The trial court granted Capital Partners' and BTH's summary judgment motions and denied all other requested relief. The trial court rendered a final summary judgment that awarded BTH roughly $1.73 million to compensate for the deficiency on its loans, and it awarded Capital Partners roughly $1.78 million to

compensate for the deficiency on the lease, plus attorney's fees. This appeal followed.

## STANDARD OF REVIEW

We review a summary judgment de novo. *Tex. Workforce Comm'n v. Wichita Cnty.*, 548 S.W.3d 489, 492 (Tex. 2018). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017).

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied); *see* TEX. R. CIV. P. 166a(a), (c). A matter is conclusively established if "the evidence must leave no room for ordinary minds to differ as to the conclusion to be drawn from it." *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019) (internal quotation omitted). If the movant conclusively proves each element of its claim or affirmative defense, the burden shifts to the nonmovant to raise a genuine issue of material fact

precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

Generally, a denial of a summary judgment is not reviewable on appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). A denial is reviewable, however, when "both sides moved for summary judgment on the same issues and the trial court granted one motion for summary judgment and denied the other." *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 724 (Tex. App.—Dallas 2015, no pet.). When reviewing the trial court's judgment on the parties' cross-motions for summary judgment, we "determine all questions presented and render the judgment that the trial court should have rendered." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018).

**ANALYSIS**

Appellants bring separate issues on appeal. However, each of their briefs begins with the same argument within the first issue: because Capital Partners provided inadequate notification of its intent to sell Fast Lane's collateral, the summary judgment in favor of appellees cannot stand. In Wilson's second issue, she takes this argument one step further when she reasons that the notification was so grossly deficient that she should be entitled to a summary judgment disposing of BTH and Capital Partners' claims.

We agree that the notification of disposition was deficient. The presence of a fact issue on reasonable notice, though, makes summary judgment for either side

inappropriate. Appellants each raise other issues on appeal. But appellants are already entitled to reversal of summary judgment, and these other issues would afford appellants no greater relief. We therefore do not consider them.

## I.    Applicability of the UCC

Both sides argue that the lease is not a traditional lease but a commercial security interest as defined under the UCC. *See* TEX. BUS. & COM. CODE § 1.203(a) (defining "[w]hether a transaction in the form of a lease creates a lease or security interest"). The evidence supports the parties' contentions. Specifically, the lease was not terminable by the lessee and allowed the lessee to purchase the equipment for nominal consideration at the end of the term. *See id.* § 1.203(b)(4). Accordingly, Capital Partners' disposition of the equipment was subject to the requirements stated in chapter nine of the UCC. *See id.* §§ 9.101–.809 (governing secured transactions).

## II.    Adequacy of Notification

In most cases, the UCC requires secured creditors to provide reasonable notification when disposing of repossessed collateral. *Regal Fin. Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 599 (Tex. 2010). Under UCC chapter nine, a creditor must give "a reasonable authenticated notification of disposition" to certain interested parties, including "any secondary obligor." TEX. BUS. & COM. CODE § 9.611(b)–(c); *see People's Capital & Leasing Corp. v. McClung*, No. 5:17-CV-484-OLG, 2018 WL 2996902, at *6 (W.D. Tex. May 4, 2018) (treating a guarantor as a secondary obligor). "The purpose of this notification is to give the debtor an

opportunity to discharge the debt, arrange for a friendly purchaser, or to oversee that it is conducted in a commercially reasonable manner." *SMS Fin., LLC v. ABCO Homes, Inc.*, 167 F.3d 235, 242 (5th Cir. 1999).

In non-consumer transactions such as this one, the UCC creates a safe harbor for notifications of disposition that include five categories of information:

> (A) describes the debtor and the secured party;

> (B) describes the collateral that is the subject of the intended disposition;

> (C) states the method of intended disposition;

> (D) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

> (E) states the time and place of a public disposition or the time after which any other disposition is to be made.

TEX. BUS. & COM. CODE § 9.613(1). If the notification lacks any of the required information, then it becomes a question of fact whether the notification is nevertheless sufficient. *Id.* § 9.613(2). No particular form is required for the notification. *Id.* § 9.613(4). A notification that substantially provides the information specified is sufficient, even if the notification includes excess information or minor errors that are not seriously misleading. *Id.* § 9.613(3).

Capital Partners maintains that its president Michael Austin sent a reasonable notification of disposition when he e-mailed appellants on June 20, 2018. In the e-mail, Austin explains his company's plan to repossess Fast Lane's collateral in the weeks that followed:

I received your voice message, Bryan, and thought I would answer to everyone via email.

Capital Partners is contracting with Advantage Healthcare for the inventory and removal of all the permissible equipment from the FLER clinic. As of now this will occur July 9 - 10 and we have received permission from the landlord for these dates.

Advantage will conduct an inventory of what is at the facility so we will have a written record of the items before they are removed. The items will then be offered for sale and we have received a few bids. Mainly for the CT and radiology equipment thus far.

The landlord is allowing us to remove the generator but not the HVAC systems since your tenant lease specifically prohibits their removal. We will not be able to remove anything that is considered attached to the building which includes the HVAC and med gas systems. Obviously there is a lot of tenant improvements which are not recoverable that will affect the final shortfall once the equipment and furnishings have been fully liquidated.

As far as I know the landlord is the only party that has current access to the facility so all of the equipment and furnishings should be secure until they can be inventoried and removed.

This e-mail does not purport to be a notification of disposition, but it does touch on the topic of disposing the collateral. The question is whether this e-mail substantially includes all the elements required by section 9.613.[2] *See Regions Bank v. Thomas*, 422 S.W.3d 550, 563–65 (Tenn. Ct. App. 2013) (analyzing whether general correspondence concerning collateral met the UCC's requirements for a notification of disposition).

---

[2]"The UCC should be construed to promote uniformity with other jurisdictions." *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 391 (Tex. 2011). We refer extensively to decisions from other jurisdictions concerning UCC chapter 9.

The first element is to describe the debtor and the secured party. TEX. BUS. & COM. CODE § 9.613(1)(A). We conclude that the e-mail satisfies this element. The e-mail mentions Capital Partners and gives information from which Capital Partners' status as a secured party could be inferred. *See USA Fin. Servs., LLC v. Young's Funeral Home, Inc.*, No. CIV.A. U607-11-102, 2010 WL 3002063, at *3 (Del. Com. Pl. June 24, 2010) (implying that an element that was not specifically covered in a notification of disposition could be inferred from its content). The e-mail mentions that Capital Partners would be arranging repossession of collateral from "FLER," which appellants would have understood as an acronym for the debtor with which they were affiliated, Fast Lane Emergency Room. Because the e-mail provides the debtor's and the secured party's names and gives information from which their roles in the secured transaction could be readily deduced, the e-mail satisfies the first element.

The second element requires the secured party to describe the collateral that is the subject of the intended disposition. TEX. BUS. & COM. CODE § 9.613(1)(B). In general, a description of personal property is sufficient, whether or not it is specific, if it reasonably identifies what is described. *Id.* § 9.108(a); *Crow-Southland Joint Venture No. 1 v. N. Fort Worth Bank*, 838 S.W.2d 720, 723 (Tex. App.—Dallas 1992, writ denied). The description need not be in exact detail or include a serial number. *In re ProvideRx of Grapevine, LLC*, 507 B.R. 132, 162 (Bankr. N.D. Tex. 2014) (quoting TEX. BUS. & COM. CODE § 9.108 cmt. 2). "The test of sufficiency

under this section . . . is that the description does the job assigned to it: make possible the identification of the collateral described." *Id.*

In the e-mail, Austin states a plan to liquidate what he variously referred to as "what is at the facility" and "the items." These descriptions are insufficient. "A description of collateral as 'all the debtor's assets' or using words of similar import does not reasonably identify collateral." *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 422 (Bankr. N.D. Tex. 2021); *see* TEX. BUS. & COM. CODE § 9.108(c). "These supergeneric, catch-all descriptions fail as a matter of law." *Essential Fin.*, 629 B.R. at 422; *see Rossmann v. Bishop Colo. Retail Plaza, L.P.*, 455 S.W.3d 797, 809 (Tex. App.—Dallas 2015, pet. denied).

On the other hand, Austin's message does mention that Capital Partners intended to repossess and sell "all the permissible equipment from the FLER clinic" and had already received bids "for the CT and radiology equipment." A description reasonably identifies the collateral if it identifies the collateral by category or by type of collateral defined in the UCC. TEX. BUS. & COM. CODE § 9.108(b)(2)–(3). "Equipment" is a type of collateral defined in the UCC. *Id.* § 9.102(33). Furthermore, including the location of the property in the collateral description can be "a significant factor" in assessing the adequacy of the description. *In re Estate of Wheeler*, 410 P.3d 483, 486 (Colo. App. 2013). This reference to two categories of medical equipment located at a specific place is sufficient to describe the items that fell in those categories. *See id.*; *Crow-Southland*, 838 S.W.2d at 724; *accord*

*Milwaukee Mack Sales, Inc. v. First Wis. Nat. Bank of Milwaukee*, 287 N.W.2d 708, 714 (Wis. 1980). However, Capital Partners' own evidence shows that much of the collateral did not fall into those categories. Austin's e-mail does not describe any of this other collateral, some of which was sold separately from the CT and radiology equipment, and thus the e-mail does not satisfy the second element with respect to much of the collateral in question. *See* 68A Am. Jur. 2d Secured Transactions § 519 ("When the collateral is sold in separate parts, proper notice must be given with respect to the sale of each part.").

BTH and Capital Partners fare no better on the third element, which requires the secured party to state the method of intended disposition. TEX. BUS. & COM. CODE § 9.613(1)(C). To satisfy this element, we have required the notification of disposition to state, at a minimum, whether the disposition will be through a public or private sale. *See Knights of Columbus Credit Union v. Stock*, 814 S.W.2d 427, 430 (Tex. App.—Dallas 1991, writ denied); *accord Boulevard Bank v. Malott*, 397 S.W.3d 458, 465 (Mo. Ct. App. 2013) ("The [UCC] does not permit the creditor to leave the debtor guessing regarding the type of sale contemplated." (quoting *Union Safe Deposit Bank v. Floyd*, 76 Cal. App. 4th 25, 31 (1999), *as modified* (Nov. 3, 1999)); *Thomas*, 422 S.W.3d at 565 (concluding that a notification was not reasonably sufficient "where it did not indicate whether the [collateral] would be sold at public or by private sale"). "Public and private sales of collateral are significantly different methods of disposition[] and are subject to materially different

–11–

notice requirements." *Boulevard Bank*, 397 S.W.3d at 463. "[A] 'public' disposition is 'one at which the price is determined after the public has had a meaningful opportunity for competitive bidding.'" *Lister v. Lee-Swofford Invs., L.L.P.*, 195 S.W.3d 746, 752 (Tex. App.—Amarillo 2006, no pet.) (quoting TEX. BUS. & COM. CODE § 9.610, cmt. 7). "A private sale, by contrast, is not open to the general public, usually does not occur at a pre-appointed time and place, and may or may not be generally advertised." *Boulevard Bank*, 397 S.W.3d at 463.

The e-mail does not state whether the sale would be public or private. At most, the e-mail may offer a clue on this issue when it states that "[t]he items will then be offered for sale and we have received a few bids." This statement may imply that the sale would be a private sale since it suggests that the bids were being received ahead of time rather than being received live, as in a public auction. Even so, this one clue concerning the sale's format does not conclusively answer the question of whether the sale would be public or private. *See, e.g.*, *SunTrust Bank v. Monroe*, No. 02-16-00388-CV, 2018 WL 651198, at *12 (Tex. App.—Fort Worth Feb. 1, 2018, no pet.) (mem. op.) (documenting "a private sale at an auction").

The fourth element requires the notification to state "that the debtor is entitled to an accounting of the unpaid indebtedness and state[] the charge, if any, for an accounting." TEX. BUS. & COM. CODE § 9.613(1)(D). The e-mail makes no mention of appellants' right to an accounting, and it does not satisfy this element. *See Pate Ga. Timber, LLC v. Kilpatrick*, No. CV415CV0237HLMWEJ, 2015 WL 13389608,

at *3 (N.D. Ga. Dec. 15, 2015); *In re Schwalb*, 347 B.R. 726, 751 (Bankr. D. Nev. 2006); *Arthur v. Carver Fed. Sav. Bank*, 55 N.Y.S.3d 5, 6 (N.Y. App. Div. 2017). *See generally* TEX. BUS. & COM. CODE § 9.210 (defining the parties' rights and duties with respect to accounting).

The fifth element requires the notification to state "the time and place of a public disposition or the time after which any other disposition is to be made." TEX. BUS. & COM. CODE § 9.613(1)(E). The e-mail did not specifically state whether the sale would be public or private, and thus we have no firm benchmark against which to grade the e-mail's content. Regardless, even if the intended disposition were a private sale, which is the less rigorous option from a notice perspective, the e-mail would nonetheless be deficient on this element. The only dates mentioned in the e-mail are that Advantage would "inventory and remov[e] . . . all the permissible equipment from the FLER clinic" on "July 9 – 10." Stating that the *repossession* of collateral would occur at a certain time is significantly different than stating that the *sale* of that collateral would occur at a certain time. *See, e.g.*, *SunTrust Bank*, 2018 WL 651198, at *12 (holding there was a fact issue concerning reasonable notice where some evidence indicated that the collateral sale took place two years after property was repossessed). While the e-mail gives dates for the repossession, it offers no information concerning when the sale might occur. Therefore, it fails to satisfy the fifth and final element.

BTH maintains that any gaps in the e-mail's content can be filled by a set of demand letters that Capital Partners sent to appellants on February 15, 2018. There is mixed precedent on whether two documents may jointly provide notice, such that one document might compensate for a shortfall in another document's content. *Compare ProvideRx of Grapevine*, 507 B.R. at 165 (reading two documents together and concluding that they jointly gave sufficient notice), *with States Res. Corp. v. Gregory*, 339 S.W.3d 591, 597 (Mo. Ct. App. 2011) (concluding that notice of disposition cannot be jointly given by two documents). Regardless, even assuming for the moment that it is appropriate to read multiple documents together, we disagree that the demand letters compensate for the email's shortcomings. The demand letters stated appellants could obtain further details about the obligations in default by calling Capital Partners. This does not conclusively satisfy the fourth element's requirement to state that the debtor is entitled to an accounting of the unpaid indebtedness and to list the charge for any accounting. *See In re Downing*, 286 B.R. 900, 904 (Bankr. W.D. Mo. 2002) (concluding that a letter gave no notice of debtor's right to accounting even where it invited the debtor to call creditor with any questions). For present purposes, all that the letters offer is a more particular description of the debtor, the guarantors, and the secured party. We have determined that the e-mail already satisfied the first element's requirement to describe the parties, and the letters add nothing with respect to the other four missing elements.

Again, if the notification lacks any of the required information, it becomes a question of fact whether the notification is nevertheless sufficient. TEX. BUS. & COM. CODE § 9.613(2). Because the notification lacked four categories of required information, this issue was for the factfinder to decide. The summary judgment in BTH and Capital Partners' favor cannot stand. *See VFS Leasing v. Bric Constructors, LLC*, No. M2011-01894-COA-R3CV, 2012 WL 2499518, at \*6 (Tenn. Ct. App. June 28, 2012) (reversing summary judgment because two categories of required information were not included in the notification of disposition).

In her second issue, Wilson contends that the notification was so grossly deficient that she should be entitled to summary judgment disposing of BTH and Capital Partners' claims. We disagree. The presence of fact issues on reasonable notice precludes a summary judgment in favor of appellants.

Next, Wilson and appellees dispute the effect that a defective notification should have on this case. Wilson contends that because the e-mail did not satisfy the requirements of section 9.613(1), appellees were barred from obtaining any deficiency judgment at all, and she was entitled to summary judgment dismissing appellees' claims. *See* TEX. BUS. & COM. CODE § 9.613(1). Appellees claim that a defective notification would simply reduce their deficiency judgment in accordance with UCC section 9.626. *Id.* § 9.626. We agree with appellees.

Wilson relies on dated caselaw for the premise that a failure to give proper notification of disposition barred recovery of any deficiency. *See, e.g.*, *Wright v. Interfirst Bank Tyler, N.A.*, 746 S.W.2d 874, 878 (Tex. App.—Tyler 1988, no writ) (reversing judgment for creditor and rendering take-nothing judgment in debtor's favor because reasonable notification of disposition was not provided). This caselaw was abrogated in part in 1999 with the passage of section 9.626, which permits a commercial creditor to recover a deficiency despite failing "to prove that the collection, enforcement, disposition, or acceptance" was conducted in accordance with the relevant provisions of the subchapter, subject to certain limitations. TEX. BUS. & COM. CODE § 9.626(a)(3); *see Beardmore v. Am. Summit Fin. Holdings, LLC*, 351 F.3d 352, 356 (8th Cir. 2003) ("Texas abandoned the absolute bar rule effective July 1, 2001."). Under section 9.626, a secured party's ability to collect a deficiency without proper notification is limited, but not eliminated. Thus, appellees could still recover a deficiency even if they failed to provide sufficient notification of disposition.

We sustain appellants' respective first issues. We overrule Wilson's second issue. We do not consider appellants' remaining issues, which could afford them no greater relief.

**CONCLUSION**

Having concluded the trial court erred in granting appellees' motions for summary judgment, we sustain appellants' first issues. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200704F.P05

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LORY K. WILSON, GREGORY S. VENABLE, AND JAMES B. JOHNSON, Appellant

No. 05-20-00704-CV      V.

CAPITAL PARTNERS FINANCIAL GROUP USA, INC. AND BTH BANK, NATIONAL ASSOCIATION, Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-09275. Opinion delivered by Justice Partida-Kipness. Justices Schenck and Osborne participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants LORY K. WILSON, GREGORY S. VENABLE, AND JAMES B. JOHNSON recover their costs of this appeal from appellees CAPITAL PARTNERS FINANCIAL GROUP USA, INC. AND BTH BANK, NATIONAL ASSOCIATION.

Judgment entered this 5th day of July 2022.