Jeanne E. MANCUSO, Appellant,

v.

LONG BEACH ACCEPTANCE
CORPORATION,
Respondent.

No. WD 68110.

Missouri Court of Appeals,
Western District.

March 4, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 29, 2008.

Application for Transfer Denied
June 24, 2008.

Dale K. Irwin, Paul Matthew Tancredi, Kansas City, MO, for Appellant.

Jeffrey John Simon, Kansas City, Mo, for Respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., J., and JAMES WELSH, SP. J.

JAMES M. SMART, JR., Judge.

Jeanne Mancuso appeals the trial court's dismissal of her petition against Long Beach Acceptance Corporation for failure to state a claim for statutory damages under Missouri's Uniform Commercial Code. The judgment is affirmed.

## Background

In July 2002, Jeanne Mancuso purchased a vehicle from Adams Chevrolet in Raytown, Missouri. She financed the purchase by executing a "retail installment contract and security agreement," which granted Adams a security interest in the vehicle. The contract required Ms. Mancuso to maintain property insurance on the vehicle. Adams subsequently assigned the contract to Long Beach Acceptance Corporation.

Ms. Mancuso defaulted on the loan contract. The record does not clarify the nature of her default. On May 28, 2003, Long Beach repossessed the vehicle.

The next day, Long Beach sent Ms. Mancuso a "Notice of Our Plan to Sell Property." It advised her, *inter alia,* that the vehicle would be sold at a private sale after a certain date and informed her of the steps she must take to redeem the vehicle. The notice substantially followed the suggested language of section 400.9–614(3),[1] the "safe-harbor" format. It indicated that in order to redeem the vehicle, Ms. Mancuso would be required to pay the full amount due. It also included the following provision:

> In addition to paying us the full amount you owe to get the vehicle back (payment in certified funds), you will also be required to provide us with proof of proper insurance coverage, and you may be required to provide us with proof that all checks ... you have already issued to us ... in the last 30 days have cleared.....

Ms. Mancuso did not redeem the vehicle, and Long Beach eventually sold it at auction.

On December 28, 2004, Ms. Mancuso filed a petition against Long Beach in Jackson County Circuit Court. She sought to recover statutory damages under section 400.9–625 of Missouri's version of the Uniform Commercial Code (UCC), based on her claim that Long Beach's notice did not comply with section 400.9–614 of the UCC. She specifically complained that the "proof of proper insurance" language was misleading and misstated her

---

1. Statutory references are to the Revised Statutes of Missouri, cum. supp.2006, unless otherwise indicated.

redemption rights. She also sought class action certification under Rule 52.08.

Long Beach removed the case to federal court. There, Long Beach filed a motion to dismiss for failure to state a claim upon which relief could be granted. Long Beach argued that its notice did not violate section 400.9–614, because it had the right to require Ms. Mancuso to fulfill all of her obligations under the contract before redemption. This included the obligation to keep the vehicle insured until the loan was paid in full. Thus, Long Beach claimed, its requirement for proof of that insurance coverage was neither improper nor misleading. Mancuso responded that if the entire balance were to be paid in full, then Long Beach would have no right to require proof of insurance, because, at that point, it would no longer have any interest in the collateral. The federal court did not rule on the motion to dismiss. Instead, the court granted Ms. Mancuso's motion to remand to state court.

On remand, the record of the federal proceedings, including the motion to dismiss, was filed in the state court pursuant to Missouri Supreme Court Rule 55.34. The state court, after considering the motion to dismiss and the suggestions in opposition, dismissed the petition without specifying the basis for the ruling.

Ms. Mancuso appeals, contending that the court erroneously applied the law in dismissing her petition for failure to state a claim for statutory damages under section 400.9–625.

## Standard of Review

A dismissal for failure to state a cause of action is reviewed *de novo*. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 768 (Mo. banc 2007). Such a motion is a test solely of the adequacy of the petition. *Id.* We assume that the averments in the petition are true and liberally grant all reasonable inferences flowing therefrom. *Id.* With that in mind, we review the petition to determine if the facts pleaded and their reasonable inferences state any grounds for relief. *Rychnovsky v. Cole*, 119 S.W.3d 204, 208 (Mo.App. 2003). Where the trial court does not state its reasons for granting the dismissal, we presume that it was based on the grounds stated in the motion. *Id.* We will affirm if dismissal was appropriate on any of those grounds. *Id.*

Ms. Mancuso asserts that the sufficiency of the notice in this case may be determined as a "matter of law." Long Beach seems to agree. We agree also. Perhaps in some cases the reasonableness of the notice may be a question of fact. *See, e.g., Boender v. Chicago N. Clubhouse Ass'n, Inc.*, 240 Ill.App.3d 622, 181 Ill.Dec. 134, 608 N.E.2d 207, 213 (1992); *McCoy v. Am. Fid. Bank & Trust Co.*, 715 S.W.2d 228, 230–31 (Ky.1986); *see also* 68A Am.Jur.2d *Secured Transactions* sec. 617. In a case such as this, however, where there is no dispute as to the notice given, and the issue is whether the terms set forth in the notice misrepresent the debtor's redemption rights, the reasonableness of the notice may be decided as a matter of law. *See City Nat'l Bank of Fort Smith v. Unique Structures, Inc.*, 929 F.2d 1308, 1311–12 (8th Cir.1991); *Topeka Datsun Motor Co. v. Stratton*, 12 Kan.App.2d 95, 736 P.2d 82, 88–89 (1987); *see also* Anderson's Uniform Commercial Code sec. 9–504:170 (3d ed.).

Our review of legal issues seeks to determine whether the trial court erroneously declared the law or misapplied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Issues of statutory interpretation are reviewed *de novo*. *Ochoa v. Ochoa*, 71 S.W.3d 593, 595 (Mo. banc 2002).

## Statutory Framework

The issues raised in this appeal require an analysis of certain provisions of Article 9 of the UCC. Part 6 of Article 9 defines the rights and remedies of the parties and sets forth the proper procedures after a debtor has defaulted on his obligations under a security agreement. *See* 4 James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE sec. 34-1 (5th ed.2002). Those procedures begin with section 400.9-609,[2] which permits a secured party following a default to "take possession of the collateral," or to repossess it. Pursuant to section 400.9-610, the secured party may dispose of the collateral, by sale or otherwise, so long as every aspect of the disposition is "commercially reasonable."

At issue in this case are the specific pre-sale "notice" requirements the secured party must follow before selling the repossessed collateral. Section 400.9-611(b) requires a secured party to provide the debtor with *reasonable notice* of its intent to sell the collateral. The content of the notice for consumer transactions, such as this, is dictated by section 400.9-614. Subsection (1) of that statute sets out what must be included in the notice. Section 400.9-614(1).[3] The statute does not require that the notice use any "particular phrasing." Section 400.9-614(2). Section 400.9-614(3) sets forth a format, which, if used, "provides sufficient information."[4]

---

**2.** Article 9 of the UCC has been adopted in Missouri at sections 400.9-101, *et. seq.* Missouri's statutory scheme for its version of the UCC adds the prefix of 400 to the UCC numbering scheme. *See* A. Spradling, Jr. and W. Welliver, *Introduction to the Uniform Commercial Code,* 20 J. Mo. Bar 172 (1964), *reprinted in* 20A V.A.M.S. at XI (1994). Thus, section 9-609 of the UCC is denominated section 400.9-609 in Missouri's statutes.

**3.** Section 400.9-614(1) states:

A notification of disposition must provide the following information:
(A) The information specified in section 400.9-613(1) [which states: (1) The contents of a notification of disposition are sufficient if the notification: (A) Describes the debtor and the secured party; (B) Describes the collateral that is the subject of the intended disposition; (C) States the method of intended disposition; (D) States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and (E) States the time and place of a public disposition or the time after which any other disposition is to be made];
(B) A description of any liability for a deficiency of the person to which the notification is sent;
(C) A telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9-623 is available; and

(D) A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available[.]

**4.** The pertinent provisions of section 400.9-614(3) state:

The following form of notification, when completed, provides sufficient information:
(Name and address of secured party)
(Date)
NOTICE OF OUR PLAN TO SELL PROPERTY
(Name and address of any obligor who is also a debtor)
Subject: (Identification of Transaction)
We have your (describe collateral), because you broke promises in our agreement.
. . . .
(For a private disposition:)
We will sell (describe collateral) at private sale sometime after (date). A sale could include a lease or license.
The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you (will or will not, as applicable) still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.
You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due

This is referred to as the "safe-harbor" format. *See* section 400.9–614, cmt. 3. Additional information may be included in the notice, pursuant to section 400.9–614(4), and an error in non-required information is allowed so long as it is not "misleading" as to redemption rights. Section 400.9–614(5).

 A creditor is held to the requirement of strict compliance with these notice provisions. *Boatmen's Bank of Nev. v. Dahmer*, 716 S.W.2d 876, 877 (Mo.App. 1986). Any doubt about what constitutes strict compliance is resolved in the debtor's favor. *Id.* A debtor's remedies for the secured party's failure to comply with these notice requirements can be found at section 400.9–625. It provides, in part, that where the collateral is consumer goods and the secured party fails to comply with the provisions of Part 6 of Article 9, the debtor

> may recover for that failure in any event an amount not less than the credit service charge plus ten percent of the principal amount of the obligation or the time-price differential plus ten percent of the cash price.

Section 400.9–625(c)(2).

### Standing

Ms. Mancuso does not claim that any deficiency of the notice precluded her from exercising her right of redemption, or caused her damage in any other way. Nevertheless, she has standing to bring this action. The statutory subsection "provides a minimum, statutory, damage recovery for a debtor" independent of a showing of damage. Section 400.9–625, cmt. 4. It is "designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted." *Id.*

### Ms. Mancuso Claims the Requirement of Proof of Insurance is an Unlawful and Misleading Post–Redemption Requirement

 Ms. Mancuso contends that her petition stated a valid claim for statutory damages under section 400.9–625 and, thus, should not have been dismissed. Her petition alleged that Long Beach failed to comply with the notice requirements in Article 9 by wrongly requiring her to provide proof of insurance, in addition to tendering full payment, in order to redeem the vehicle. She claimed that the notice did not comply with section 400.9–614(5), because it is

> seriously misleading and misstates debtors' redemption rights arising under Article Nine by imposing an unlawful post-redemption requirement of proof of insurance coverage after Long Beach's interest in the collateral would have ended[.]

As a result, the petition alleged, Long Beach is liable for the statutory damages imposed by section 400.9–625(c)(2). Spe-

---

payments), including our expenses. To learn the exact amount you must pay, call us at (telephone number).

　　If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at (telephone number) (or write us at (secured party's address)) and request a written explanation. (We will charge you $ for the explanation if we sent you another written explanation of the amount you owe us within the last six months.)

If you need more information about the sale call us at (telephone number) (or write us at (secured party's address)).

　　We are sending this notice to the following other people who have an interest in (describe collateral) or who owe money under your agreement:

(Names of all other debtors and obligors, if any)
　　(End of Form)

cifically, Ms. Mancuso objected to the provision in Long Beach's notice that stated: "In addition to paying us the full amount you owe to get the vehicle back ..., *you will also be required to provide us with proof of proper insurance coverage* [.]" (Emphasis added.)

Paragraph (5) of section 400.9–614 provides that

[a] notification in the form of paragraph (3) is sufficient, even if it includes errors in information not required by paragraph (1), *unless the error is misleading with respect to rights arising under this article* [.]

(Emphasis added.) Ms. Mancuso says the insurance requirement is "misleading" as to her rights under the article, because her obligation to maintain insurance on the vehicle "would immediately cease upon payment of the contract in full." She points to the following insurance provision in the contract:

INSURANCE: You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. .... You will keep the insurance in full force and effect *until this Contract is paid in full.*

(Emphasis added.) Ms. Mancuso contends that Long Beach cannot require her both to pay the contract in full—which, in itself, will redeem the collateral—*and* to show proof of insurance in order to redeem. She also says the requirement is misleading because it is vague and ambiguous as to the time period the requested proof of insurance is to cover.

### Statutory Interpretation

The parties do not provide, nor have we found, any authority that is directly on point. Thus, resolution of this case requires interpretation of the applicable statutory language and examination of analogous case law. The court's primary role in construing statutes is to ascertain the intent of the legislature from the language used and to give effect to that intent if possible. *Hawkins v. Lemasters,* 200 S.W.3d 57, 60 (Mo.App.2006). Words are to be construed in a manner consistent with the legislature's purpose in enacting the law. *State v. Schleiermacher,* 924 S.W.2d 269, 276 (Mo. banc 1996).

The legislature's purposes in adopting the UCC include: "to simplify, clarify and modernize the law governing commercial transactions," and "to make uniform the law among the various jurisdictions." *Dean Mach. Co. v. Union Bank,* 106 S.W.3d 510, 517 (Mo.App.2003) (*quoting* section 400.1–102(2)(a) & (c), RSMo 1994). The provisions of the UCC are to be "liberally construed and applied to promote its underlying purposes and policies." Section 400.1–102(1). "[T]he language should be construed narrowly or broadly, as the case may be, in conformity with the purposes and policies involved." Section 400.1–102, cmt. 1.

### Long Beach's Notice Did Not Contain An "Error"

The debtor needs to show the notice was "misleading" only if the notice contained an "error" that was misleading. These terms are not defined in section 400.9–614(5) or elsewhere in Article 9 of the commercial code. Where there is no specific statutory definition, words used in a statute are given their plain and ordinary meaning. *Dean Mach.,* 106 S.W.3d at 518.

The term "error" is often considered an "act, assertion, or belief that *unintentionally* deviates from what is correct, right, or true." AMERICAN HERITAGE DICTIONARY, 606

(4th ed.2006) (emphasis added). Avoiding for the moment the legal question of whether the notice was within statutory boundaries, we can say that Long Beach intended to include the insurance requirement in the notice, and apparently did so with the belief (whether legally right or wrong) that it was entitled to do so. Long Beach's notice correctly, rightly, and truly stated what Long Beach intended for it to say. There was no inadvertence in a practical sense. Inclusion of the insurance requirement, therefore, we conclude, was presumably not an "error" in the sense of section 9–614(5).

If there was not an "error," it means only that Ms. Mancuso need not plead or show that the notice was "misleading." Ms. Mancuso can still argue that the notice *was* misleading, however, as a part of her argument that the notice was not "reasonable" as required by section 400.9–611(b). A misleading notice would generally, we think, be a notice that is not reasonable; but it may be possible that a notice could be unreasonable in its content without necessarily being misleading. In this case, the two concepts may overlap, because here we are concerned about whether the notice was an improper discouragement of the right of redemption.

We view the concept of a misleading notice as being a subcategory of the concept of an unreasonable notice. Accordingly, we interpret the assertion in the pleadings that the notice was misleading as an allegation that the notice was not reasonable. Our analysis, therefore, will proceed toward the goal of determining whether the notice was "reasonable" in content.

## The Notice Must Be Reasonable In Content

Section 400.9–611(b) states:

> Except as otherwise provided in subsection (d) [an exception for collateral that is perishable], a secured party that disposes of collateral under section 400.9–610 shall send to the [debtor] a reasonable authenticated notification of disposition.

(Emphasis added.) Comment 2 to section 400.9–611(b) explains that

> [t]he notification must be reasonable as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the disposition is to take place), and its content. See Sections 9–612 (timeliness of notification), 9–613 (contents of notification generally), 9–614 (contents of notification in consumer-goods transactions).

Most cases involving the issue of improper notice concentrate on whether the notice was "reasonable," as required by UCC section 9–611(b).[5] In determining whether a UCC violation has occurred, court decisions from other jurisdictions can be instructive, particularly where there is a dearth of Missouri case law interpreting the provision in question. *See Dean Mach.*, 106 S.W.3d at 517. Courts in other jurisdictions have held that notice that misstates the debtor's lawful right of redemption is not "reasonable" if it undermines the purposes of the notice requirement. *See, e.g., Moore v. Fid. Fin. Servs., Inc.* 869 F.Supp. 557, 562 n. 14 (N.D.Ill. 1994) (*quoting Topeka Datsun Motor*, 736 P.2d at 88.) ("misleading information that undermines the entire purpose of the notice 'becomes no notice at all' "); *Wilmington Trust Co. v. Conner*, 415 A.2d 773, 776

---

**5.** In July 2001, a comprehensive revision of Article 9 went into effect. Prior to that, this requirement was located in section 9–504(3). The cases we cite herein with regard to reasonable notice were decided under the earlier version of Article 9.

(Del.1980) ("Any aspect of the notice that is contrary to the purposes [for notice] necessarily prevents it from being 'reasonable notification.'"). The purpose of the notice requirement is "to apprise the debtor of the details of disposition so that [he] may take appropriate action to protect his [ ] interest." *Thong v. My River Home Harbour, Inc.*, 3 S.W.3d 373, 377 (Mo.App. 1999). Proper notice gives the debtor the opportunity (1) to discharge the debt and reclaim the collateral, (2) to find another purchaser, or (3) to verify that the sale is conducted in a commercially reasonable manner. *Id.*

In *Wilmington Trust*, an oft-cited case on the question of reasonableness, the notice overstated the amount necessary to redeem the collateral by incorrectly including $654.61 in rebates for unearned finance charges and insurance premiums. 415 A.2d at 776. It was immaterial, according to the court, that the UCC did not require the notice to state an amount necessary to redeem. *Id.* The key issue, the court said, was whether "reasonable notification" was given. *Id.* The court explained that the "insertion of an unduly inflated figure in the notice discourages and perhaps frustrates the attempts of the debtor to find another buyer or to exercise his redemption rights." *Id.* The *Wilmington* court held that the notice violated the UCC as a matter of law, because it was not "reasonable" and was, therefore, defective. *Id.*

Generally, with some dissent,[6] courts have found that notice may be "not reasonable" if it misstates the amount owed or requires things of the debtor that are not actually owed. *See, e.g., Travis v. Boulevard Bank, N.A.*, 880 F.Supp. 1226, 1232–34 (N.D.Ill.1995) (notice requiring payment of unauthorized insurance premiums as

condition of redemption may be considered unreasonable); *Cessna Fin. Corp. v. Design Eng & Const. Int'l, Inc.*, 176 Ga.App. 206, 335 S.E.2d 625, 627 (1985) (notice understated amount due for redemption in a way that discouraged redemption); *Coones v. F.D.I.C.*, 848 P.2d 783, 803 (Wyo. 1993) (notice misrepresented debtor's redemption rights by stating that he would have to competitively bid on the collateral).

In a Missouri case not specifically involving the sufficiency of the notice. *Owens v. Automobile Recovery Bureau, Inc.*, 544 S.W.2d 26, 31–32 (Mo.App.1976), the court held that a creditor's act of compelling a debtor to pay an unauthorized $130 charge constituted conversion.

From all of the foregoing cases, we derive the conclusion that. notice language may be unreasonable if it causes the debtor to believe that something is required for redemption when in fact it is not legally required under the contract. Therefore, we look to the contract to see whether the notice in this case required anything of Ms. Mancuso that was not legally required under the terms of her contract.

### Long Beach Points Out that the Debtor Must Tender "Fulfillment of all Obligations Secured by the Collateral"

Paragraph (4) of section 400.9–614 states that "[a] notification in the form of paragraph (3) is sufficient, *even if additional information appears* at the end of the form[.]" (Emphasis added.) Long Beach contends that the "proof of insurance" language was "additional information" about Ms. Mancuso's existing contractual obligation to maintain property insurance on the collateral. Long Beach contends that the creditor may include any additional

---

6. *See, e.g., Ford Motor Credit Co. v. Hertzberg,* 511 N.W.2d 25, 27 (Minn.Ct.App.1994) (provision in notice overstating the amount due by approximately $4,400 was "not so substantial as to render the notice commercially unreasonable").

contract requirements that must be observed in addition to the tendering of the amount of money due under the contract.

Long Beach says Ms. Mancuso's assertion that the obligation to insure the vehicle would immediately cease upon payment of the contract in full—and along with it, Long Beach's right to require proof of insurance—is based on the presumption that "redemption occurs *at the time that Long Beach is paid the full amount owed.*" According to Long Beach, redemption occurs *only after* the debtor has paid the full amount owed *and* has fulfilled all other contractual obligations upon which the creditor has the right to insist.

In order for a debtor to redeem the repossessed collateral, section 400.9–623(b) states that the debtor "shall tender:"

(1) Fulfillment of all obligations secured by the collateral; and

(2) The reasonable expenses and attorney's fees[.]

Official Comment 2 to section 400.9–623 explains, in relevant part, that

[a tender of fulfillment] requires payment in full of all monetary obligations then due *and performance in full of all other obligations* then matured.

(Emphasis added.) Thus, in order to exercise her right of redemption, a debtor must tender not only the amount of money owed on the contract, but also *all other obligations* owed under the contract. The term "obligations" is not defined in the UCC. Section 400.9–102(a)(59) defines "obligor" as "a person that, with respect to an obligation secured by a security interest in . . . the collateral, (i) owes payment *or other performance* of the obligation[.]" (Emphasis added.) These provisions indicate that it is not only payment of money that is contemplated by the requirement that the debtor "tender . . . [f]ulfillment of all obligations secured by the collateral."

Section 400.9–623(b)(1). Rather, it includes *any performance* required under the contract. Here, that included maintaining insurance coverage on the vehicle.

Ms. Mancuso concedes that the requirement to insure the vehicle was an obligation secured by the collateral.

Long Beach says the "proof of proper insurance" requirement in the notice demands nothing more than that Ms. Mancuso tender performance of her existing insurance obligation. The insurance requirement is necessary to protect its interests, according to Long Beach, because if a debtor, after recovery of the vehicle, were to make a claim for damage that occurred while the vehicle was in the creditor's possession, the creditor would need to know the identity of the insurer in order to determine the extent to which the damage may be insured. Under section 400.9–207(b)(2), the creditor has the risk of loss of such damage, except, of course, to the extent that the vehicle has been insured.

Section 400.9–207(b) also allows the creditor to charge the debtor for the cost of any insurance it purchases. *See* section 400.9–207(b)(1). This is consistent with the parties' agreement:

If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including the insurance premium. . . . The costs of the insurance may be added to your outstanding balance or obligation.

## Ms. Mancuso Argues That When the Risk of Loss Transfers to the Creditor, the Creditor's Duty to Insure Arises.

When the creditor retakes possession of the collateral, the creditor becomes responsible for reasonably protecting its condition. Therefore, the risk of loss or damage shifts to the creditor. The question is

whether Ms. Mancuso is correct in asserting that when the risk of accidental loss or damage shifted to Long Beach, the *obligation* to keep the collateral *insured* shifted accordingly. Ms. Mancuso provides no authority in support of her position. Her position is based on the assumption that allocation of risk of loss is necessarily the same as the creation of legal duty. We see no authority or reason to conclude that the mere fact that Long Beach *had the right* to purchase insurance and shift the cost to the debtor necessarily relieved the debtor of her simultaneous contractual obligation to insure the collateral. It is true that when the creditor elects to *exercise* its right to secure insurance, the debtor is relieved of securing the insurance at that point. However, even then, the debtor is not relieved of the obligation to *pay* for the insurance.

There is no claim or indication here that Long Beach ever elected to purchase insurance on the vehicle or that it gave any notice to Ms. Mancuso that it intended to do so. There is also no contention that Long Beach attempted to charge Ms. Mancuso for any insurance cost.

### The Debtor's Obligation Continues After Repossession

The debtor's contractual obligation to insure the vehicle continues even after the car is in the creditor's possession, until such time as the car is either redeemed or sold to a third party. In section 400.9–623(b) of the Commercial Code, the General Assembly has informed creditors that they have the right to require that the debtor tender "fulfillment of all obligations secured by the collateral." Under that section then, we would assume that as long as creditors require only the conditions that are lawfully required under the contract as conditions of redemption, they may expect to be protected from liability for the demands they make. *This* creditor, Long Beach, has taken that notion literally, issuing a notice informing the debtor that the debtor may redeem the vehicle upon payment of the amount due *and* presentation of proof of insurance, *both of which* are obligations secured by the collateral.

The notice in this case says merely that the debtor will need to provide "proof of insurance." This vague phrase apparently assumes that the debtor has continued to maintain insurance on the collateral after repossession, or that the debtor *will cure* a lapse in coverage in connection with redeeming the vehicle. Even if such a requirement seems burdensome to the debtor, any perceived burden is immaterial to our analysis in this case because our inquiry is governed by the fact that the creditor has placed itself plainly within the protection provided by 400.9–623.

Even after a creditor has exercised its right of repossession, the obligations of the parties under the contract continue, subject to the provisions of Article 9 of the commercial code. As we have noted, the creditor that has repossessed a vehicle can elect either to accept the risk of damage pending disposition of the collateral without insuring it (and ask for "proof of insurance" at redemption, to provide help with any claim that may arise out of the debtor's retaking of possession), or it may obtain insurance and charge the cost to the debtor. The creditor is allowed to require "proof of insurance" or the reimbursement of the cost of its insurance as a condition of redemption because it is part of the obligation secured by the collateral.

The question for our resolution is whether the trial court erred in its declaration and application of the law. The question is *not* whether *in our personal view* the creditor's practical considerations related to insurance make it seem unreasonable

for the creditor to insist that the debtor show up with proof of insurance as well as the liquid funds to redeem the vehicle. The question also is *not* whether the creditor *could* perhaps come up with some creative and alternative way to protect its interests—without the possible side effect of discouraging the exercise of redemption rights.

The legislature, in the midst of a statutory scheme designed to protect debtors from overreaching creditors, also codified what *is reasonable* as *a matter of law.* The trial court resisted the temptation to impose its own view of reasonableness on Long Beach. We agree that the inclusion of the insurance requirement in the notice was reasonable as a matter of law in view of the fact that the maintenance of insurance on the vehicle was "an obligation secured by the collateral." Ms. Mancuso agreed to maintain insurance on the collateral, and her contractual duty to do so in this case did not cease when the creditor repossessed the vehicle.

### Conclusion

The trial court's ruling determined that the notice was not deficient because it did not require of Ms. Mancuso any more than what the contract required of her. We are unable to say that the ruling was erroneous. The court did not err in dismissing Ms. Mancuso's petition for failure to state a claim. The judgment is affirmed.

HARDWICK and WELSH, JJ., concur.