

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| AMERICREDIT FINANCIAL SERVICES, INC., D/B/A GM FINANCIAL, | ) ) ) | No. ED112095<br>Consolidated with: ED112097, ED112098, ED112167, ED112187, and ED112188 |
| Appellant/Cross-Respondent, | ) ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 15SL-AC24506-01 |
| | ) | |
| NICOLE M. BELL, | ) | Honorable Robert M. Heggie |
| | ) | |
| Respondent/Cross-Appellant. | ) | Filed: November 26, 2024 |

AmeriCredit Financial Services, Inc., d/b/a GM Financial ("GM Financial") appeals the trial court's partial grant of summary judgment entered in favor of Nicole M. Bell ("Bell") on Bell's consumer class action counterclaim seeking damages under the Uniform Commercial Code ("UCC") and GM Financial's deficiency claim against Bell.[1] Bell cross-appeals the trial court's partial grant of summary judgment entered in favor of GM Financial on Bell's consumer class action counterclaim seeking damages under the UCC. For the reasons discussed below, we hold Bell and the class members had standing to bring the class action counterclaim and the trial court erred in granting summary judgment in Bell's favor on both the class action counterclaim and GM Financial's deficiency claim. Because these holdings are dispositive, we need not reach

---

[1] On appeal, GM Financial mistakenly argues its deficiency claim against Bell was dismissed. *See* footnote 10 of this opinion.

all of GM Financial's arguments on appeal or any of Bell's arguments on cross-appeal. Accordingly, we reverse the trial court's partial grant of summary judgment entered in Bell's favor on both the consumer class action counterclaim and GM Financial's deficiency claim and remand to the trial court for further proceedings in accordance with this opinion.[2]

## I. BACKGROUND

Viewing the record in the light most favorable to the party against whom summary judgment was entered, the facts relevant to this appeal are as follows.[3]

### A. The Relevant Factual Background

In December 2008, GM Financial and Bell entered into an installment contract and security agreement in which GM Financial loaned Bell $15,469 for the purchase of a vehicle used as collateral to secure the loan. Bell subsequently defaulted on the loan after failing to make the required payments, and on December 11, 2011, GM Financial repossessed the vehicle.

On December 13, 2011, GM Financial sent Bell written notice of its plan to sell the repossessed vehicle ("pre-sale notice"). The pre-sale notice stated the vehicle would be sold after ten days from the date of the notice, described Bell's responsibility for any deficiency that may result after the sale of the vehicle, and stated that Bell could redeem the vehicle any time prior to its sale.

On January 17, 2012, the vehicle was sold at an auction held for a group of auto dealers. GM Financial subsequently sent Bell a notice of the sale, which included a detailed calculation of the resulting $8,251.80 deficiency claimed to be owed to GM Financial by Bell ("post-sale

---

[2] We deny Bell's motion to strike GM Financial's brief and dismiss the appeal, which was taken with the case.
[3] In determining whether summary judgment is appropriate, our Court must view the record in the light most favorable to the non-movant, accepting all reasonable inferences in favor of that party as true. *B.B. v. Methodist Church of Shelbina, Missouri*, 541 S.W.3d 644, 650 (Mo. App. E.D. 2017). The facts set out in this case are taken from the parties' admissions to statements of material facts and from other materials accompanying the parties' motions for summary judgment, and the responses and replies thereto. *See id.*

notice").

**B.      The Relevant Procedural Posture**

In September 2015, GM Financial filed a petition against Bell in an attempt to collect the deficiency amount she allegedly owed ("Deficiency Claim").  Bell responded by: (1) filing an answer and counterclaim, alleging various violations of the UCC[4] in GM Financial's pre-sale and post-sale notices as both an affirmative defense to GM Financial's Deficiency Claim and as the substantive basis of Bell's counterclaim; and (2) filing a motion to dismiss GM Financial's Deficiency Claim based upon the same UCC violations alleged in Bell's answer and counterclaim.

In February 2016, the Honorable Lawrence J. Permuter ("Judge Permuter") granted Bell's motion to dismiss GM Financial's Deficiency Claim, finding GM Financial had committed numerous UCC violations in its pre-sale and post-sale notices and had accordingly failed to "plead sufficient facts demonstrating compliance with section 400.9-614[5] as required by section 408.556."  Shortly thereafter, Bell filed an amended counterclaim, a consumer class action ("Class Action Counterclaim") against GM Financial seeking damages for UCC violations similar to those alleged in Bell's previously-filed answer, initial counterclaim, and motion to dismiss.[6]

In July 2020, after years of continued litigation and discovery, both parties moved for summary judgment on GM Financial's Deficiency Claim and Bell's Class Action Counterclaim.

---

[4] The alleged statutory violations raised with the trial court and in this appeal involve Article 9 of the UCC, adopted in Missouri at sections 400.9-101 RSMo, *et. seq*.  *See Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 91 n.2 (Mo. App. W.D. 2008).

[5] All statutory references are to RSMo 2016.

[6] Bell filed her Class Action Counterclaim on behalf of "herself and all other similarly situated consumers" who had received GM Financial's pre-sale and post-sale notices and who had been sued by GM Financial in an attempt to collect an alleged deficiency amount owed.  For ease of reading, further references to the Class Action Counterclaim and any related motions will typically specify Bell as the only litigant.

GM Financial's motion for summary judgment requested the court, now the Honorable Robert M. Heggie ("trial court"), to "correct" the rulings in Judge Permuter's earlier dismissal of GM Financial's Deficiency Claim and find that its pre-sale and post-sale notices fully complied with the relevant UCC statutory provisions. GM Financial also moved for summary judgment on the grounds that Bell lacked standing to bring her Class Action Counterclaim.

Bell's motion for summary judgment requested the trial court to, *inter alia*, find that GM Financial committed six separate UCC violations in its pre-sale and post-sale notices, award statutory and other damages, and find that "GM Financial is barred from collecting or recovering any alleged deficiency balances from the[] class members." As to the UCC violations, Bell's motion for summary judgment specifically alleged GM Financial: (1) "violated [sections] 400.9-611[(b)], 400.9-613[(1)(C) and (E)], [and] 400.9-614[(1)(A)] because its pre[-]sale notice[] misstate[s] the intended method of disposition and fail[s] to state the time and place of a public disposition"; (2) "violated [sections] 400.9-614(1)[(A)] and 400.9-613(1)(E) because its [] pre[-]sale notice[] incorrectly, vaguely, or ambiguously state[s] the date of the sale"; (3) "violated [section] 400.9-614(1)(B) because its [] pre[-]sale notice[] fail[s] to accurately and unambiguously describe the liability for a deficiency of the person to which the notification was mailed"; (4) "violated [sections] 400.9-611, 400.9-613, 400.9-614, and 400.9-616 because its pre[-]sale and post-sale notices include[] interest barred by [section] 408.553"; (5) "violated [section] 400.9-611(b) because its pre[-]sale notice[] overstate[s] the redemption amount by artificially inflating the repossession expenses"; and (6) "violated [section] 400.9-611(b) because its pre[-]sale notice[] [is] not authenticated and [is] improper."[7] (internal quotations omitted).

---

[7] For ease of reading, this opinion lists Bell's six alleged UCC violations in a different order than her motion for summary judgment.

In November 2023, the trial court issued its fifth amended order and judgment ("Fifth Amended Judgment") granting in part and denying in part portions of the competing motions for summary judgment filed by GM Financial and Bell. The Fifth Amended Judgment found, *inter alia*, that: (1) Bell had standing to bring her Class Action Counterclaim; (2) GM Financial violated sections 400.9-614(1) and 400.9-613(1)(E) by failing to "clearly indicate the date after which the disposition of the [vehicle] is to be made" in its pre-sale notice, and thus Bell was entitled to judgment as a matter of law on this alleged UCC violation; (3) GM Financial violated section 400.9-614(1)(B) by failing to "accurately describe the liability for the deficiency because [the pre-sale notice] asserts the proceeds from the sale could increase the amount due," and thus Bell was entitled to judgment as a matter of law on this alleged UCC violation; and (4) the four remaining alleged UCC violations had no merit, and thus GM Financial was entitled to judgment as a matter of law on each of them. Based on its findings that GM Financial committed two UCC violations in its pre-sale notice, the trial court ultimately: (1) awarded Bell and the class, *inter alia*, statutory damages under section 400.9-625(c)(2); and (2) barred GM Financial "from collecting or recovering any alleged deficiency judgments from Bell and each class member." GM Financial appeals, and Bell cross-appeals.[8]

## II.     DISCUSSION

GM Financial raises ten points on appeal. Bell raises six points on cross-appeal. In its first, fifth, and seventh points on appeal, GM Financial claims Bell and the class lacked standing to bring the Class Action Counterclaim.[9] GM Financial's second and third points on appeal

---

[8] To avoid unnecessary repetition, additional facts relevant to this appeal will be set forth in Section II. of this opinion.

[9] GM Financial challenges the standing of Bell and all class members on appeal, despite its motion for summary judgment and the trial court's Fifth Amended Judgment only addressing standing as to Bell individually. However, "[standing] need not be preserved at the trial level" and the "absence of standing may be asserted for the first time on appeal." *Schaberg v. Schaberg*, 637 S.W.3d 512, 519 (Mo. App. E.D. 2021) (citations omitted).

5

argue the trial court erred in granting summary judgment in Bell's favor on her Class Action Counterclaim because GM Financial did not violate the UCC in its pre-sale notice. In its fourth point on appeal, GM Financial argues the trial court erred in barring it from pursuing its Deficiency Claim against Bell based upon alleged UCC violations in its pre-sale notice.[10] Because we hold Bell and the class had standing to bring the Class Action Counterclaim and because GM Financial's second, third, and fourth points on appeal are dispositive in this case, we need not reach the remaining points on appeal or Bell's points on cross-appeal.

## A.    Standing

GM Financial claims on appeal that Bell and the class lacked standing to file the Class Action Counterclaim. "When standing is questioned, this Court must determine the issue of standing before examining the substantive issues in the case, as a lack of standing would require dismissal." *Wilson v. City of St. Louis*, 662 S.W.3d 749, 753 (Mo. banc 2023). Our review of whether a party has standing is *de novo*. *Id*. "When considering standing issues, courts must rely on uncontested facts." *Conseco Finance Servicing Corp. v. Missouri Dept. of Revenue*, 98 S.W.3d 540, 547 (Mo. banc 2003) (Limbaugh, C.J., concurring).

Section 400.9-625(c)(2) "'provides a minimum, statutory, damage recovery for a debtor' independent of a showing of damage." *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 92 (Mo. App. W.D. 2008) (quoting comment 4 to section 400.9-625). Furthermore, "[i]t is 'designed to ensure that every noncompliance with the requirements of Part 6 [of Article 9 of the UCC] in a consumer-goods transaction results in liability, regardless of any injury that may have

---

[10] Although both parties mistakenly advance arguments on appeal pertaining to Judge Permuter's interlocutory ruling granting Bell's motion to dismiss GM Financial's Deficiency Claim, this Court's review of the record in this case reveals the trial court ultimately granted summary judgment on this claim, effectively reconsidering and overruling the earlier interlocutory ruling on the motion to dismiss. *See State ex rel. Koster v. Didion Land Project Association, LLC*, 469 S.W.3d 914, 918 (Mo. App. E.D. 2015); *McMahon v. Geldersma*, 317 S.W.3d 700, 705 (Mo. App. W.D. 2010). Accordingly, the trial court's subsequent grant of summary judgment is the operative final judgment as to GM Financial's Deficiency Claim. *See id*.

6

resulted.'" *Mancuso*, 254 S.W.3d at 91-92 (quoting comment 4 to section 400.9-625).

In this case, Bell filed her Class Action Counterclaim against GM Financial seeking, *inter alia*, statutory damages under section 400.9-625(c)(2) for various alleged UCC violations. The uncontested facts of this case show that Bell and the class members were debtors on a loan or financing agreement with GM Financial. Additionally, the parties do not dispute on appeal that the transaction at issue in this case was a consumer-goods transaction. *See Mancuso*, 254 S.W.3d at 89, 91-92 (referring to a similar transaction involving the purchase of a vehicle through an installment contract and security agreement granting a security interest in the vehicle as a consumer-goods transaction). Accordingly, as debtors in a consumer-goods transaction seeking statutory damages from GM Financial under section 400.9-625(c)(2), Bell and the class members had standing to bring the Class Action Counterclaim. *See Mancuso*, 254 S.W.3d at 89-90, 92 (similarly holding); comment 4 to section 400.9-625; *see also Conseco*, 98 S.W.3d at 547; *Show-Me Credit Union v. Mosely*, 541 S.W.3d 28, 33 n.6 (Mo. App. E.D. 2018).[11]

**B.      Standard of Review as to the Trial Court's Grant of Summary Judgment**

We now turn to discussing the standard of review as to the trial court's grant of summary judgment. Our Court's review of a trial court's decision granting summary judgment is *de novo*. *B.B. v. Methodist Church of Shelbina, Missouri*, 541 S.W.3d 644, 650 (Mo. App. E.D. 2017). Summary judgment is only proper when the movant establishes there are no genuine issues as to the material facts and the movant is entitled to judgment as a matter of law. *Id*. Our Court must view the record in the light most favorable to the non-movant, accepting all reasonable

---

[11] We reject GM Financial's argument that Bell lacked standing to bring her counterclaim because she failed to show a "concrete injury," i.e., that she actually received the allegedly defective notices at issue in this case. GM Financial relies heavily on *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) in making this argument. However, "[t]hat case concerns actions under the Fair Credit Reporting Act and has not been applied to actions under the UCC[,]" and "[w]e do not undertake to determine whether such an extension of *Spokeo* is appropriate here." *Mosely*, 541 S.W.3d at 33 n.6.

inferences in favor of that party as true. *Id*. "We accept facts contained in affidavits or otherwise produced in support of the motion for summary judgment as true unless they are contradicted by the non-movant's response to the motion." *Id*. Moreover, we will affirm the trial court's grant of summary judgment if it would have been proper based on any ground raised in a summary judgment motion and supported by the record. *Clark v. Kinsey*, 488 S.W.3d 750, 756 (Mo. App. E.D. 2016).

**C.      Whether the Trial Court Erred in Granting Summary Judgment in Bell's Favor on Bell's Class Action Counterclaim and GM Financial's Deficiency Claim**

GM Financial's second and third points on appeal argue the trial court erred in granting summary judgment in Bell's favor on her Class Action Counterclaim, and its fourth point argues the court erred in barring GM Financial from pursuing its Deficiency Claim against Bell. We agree.

**1.      General Law and the Allegations in Bell's Motion for Summary Judgment**

This appeal involves the statutory provisions a secured party must follow in order to sell repossessed collateral under Part 6 of Article 9 of the UCC. *See Mancuso*, 254 S.W.3d at 91. A secured party must strictly comply with all statutory notice requirements, and any doubt regarding strict compliance is resolved in the debtor's favor. *Id*. at 92. A secured party's "right to a deficiency judgment accrues only when there is strict compliance with the statutory [notice] requirements." *First Community Credit Union v. Levison*, 395 S.W.3d 571, 582 (Mo. App. E.D. 2013) (citation omitted). Furthermore, the debtor in a consumer-goods transaction[12] may recover damages when the secured party fails to strictly comply with Part 6 of Article 9 of the UCC.

---

[12] As previously stated, the parties do not dispute on appeal that the transaction at issue in this case was a consumer-goods transaction. *See Mancuso*, 254 S.W.3d at 89, 91-92 (referring to a similar transaction involving the purchase of a vehicle through an installment contract and security agreement granting a security interest in the vehicle as a consumer-goods transaction).

Section 400.9-625(c); *Mancuso*, 254 S.W.3d at 92.  Accordingly, in this case both GM Financial's recovery of damages from Bell on its Deficiency Claim and Bell's recovery of damages from GM Financial on her Class Action Counterclaim hinge on whether GM Financial strictly complied with the relevant provisions of the UCC.  *See Levison*, 395 S.W.3d at 582; *Mancuso*, 254 S.W.3d at 92; section 400.9-625(c).

In determining whether a secured party has met the requirements of the UCC, this Court is guided by the principles of statutory interpretation.  *Levison*, 395 S.W.3d at 583.  "The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language."  *Moore v. Bi-State Development Agency*, 609 S.W.3d 693, 696 (Mo. banc 2020) (citation omitted).  "When the words are clear, there is nothing to construe beyond applying the plain meaning of the law."  *Id*. (citation omitted).  This Court will apply rules of statutory construction only when necessary to resolve an ambiguity when legislative intent cannot be determined from the plain language of a statute.  *Id*.

In this case, Bell's motion for summary judgment specifically alleged GM Financial committed six separate UCC violations in its pre-sale and post-sale notices.  The trial court's grant of summary judgment in Bell's favor on both her Class Action Counterclaim and GM Financial's Deficiency Claim rested upon its findings that GM Financial committed two of the six alleged UCC violations.  However, because this Court must affirm the trial court's grant of summary judgment if it would have been proper based on any ground raised in a motion for summary judgment, we will address all six of the UCC violations alleged by Bell in her motion.  *See Kinsey*, 488 S.W.3d at 756.

## 2. The Specific UCC Violations Alleged in Bell's Motion for Summary Judgment

In her motion for summary judgment, Bell alleged that GM Financial: (1) "violated [sections] 400.9-611[(b)], 400.9-613[(1)(C) and (E)], [and] 400.9-614[(1)(A)] because its pre[-]sale notice[] misstate[s] the intended method of disposition and fail[s] to state the time and place of a public disposition"; (2) "violated [sections] 400.9-614(1)[(A)] and 400.9-613(1)(E) because its [] pre[-]sale notice[] incorrectly, vaguely, or ambiguously state[s] the date of the sale"; (3) "violated [section] 400.9-614(1)(B) because its [] pre[-]sale notice[] fail[s] to accurately and unambiguously describe the liability for a deficiency of the person to which the notification was mailed"; (4) "violated [sections] 400.9-611, 400.9-613, 400.9-614, and 400.9-616 because its pre[-]sale and post-sale notices include[] interest barred by [section] 408.553"; (5) "violated [section] 400.9-611(b) because its pre[-]sale notice[] overstate[s] the redemption amount by artificially inflating the repossession expenses"; and (6) "violated [section] 400.9-611(b) because its pre[-]sale notice[] [is] not authenticated and [is] improper." (internal quotations omitted).

### a. The First and Second Alleged UCC Violations in Bell's Motion for Summary Judgment

Section 400.9-611(b) requires a secured party to provide a debtor with reasonable notice prior to the sale of repossessed collateral, and the required content of a secured party's notice in a consumer transaction is specified under section 400.9-614. *Id*.; section 400.9-611(b); *Mancuso*, 254 S.W.3d at 91. Section 400.9-614(1) requires a secured party's pre-sale notice to, *inter alia*, provide "[t]he information specified in section 400.9-613(1)." Section 400.9-614(1)(A). As relevant to Bell's first two alleged UCC violations, section 400.9-613(1)(C) requires a sufficient pre-sale notice to "[s]tate[] the method of intended disposition" and section 400.9-613(1)(E) requires the notice to "[s]tate[] the time and place of a public disposition or the time after which any other disposition is to be made." *Id*.; section 400.9-613(1)(C).

10

Bell's first alleged UCC violation in her summary judgment motion claims GM Financial violated sections 400.9-611(b), 400.9-614(1)(A), and 400.9-613(1)(C) and (E) because its pre-sale notice "misstate[s] the intended method of disposition and fail[s] to state the time and place of a public disposition." GM Financial's pre-sale notice specifies that the repossessed vehicle in this case would be sold at a "private sale." The vehicle was eventually sold at an auction before a group of auto dealers to which the public was not invited. As the Missouri Supreme Court has previously held, an auction held exclusively for auto dealers in which the public has no opportunity for competitive bidding is properly classified as a private sale. *Central Trust Bank v. Branch*, 651 S.W.3d 826, 833 (Mo. banc 2022). GM Financial correctly states the method of intended disposition in its pre-sale notice as a private sale and therefore has no statutory obligation to "[s]tate[] the time and place of a public disposition." *See id.*; sections 400.9-613(1)(C) and (E). Accordingly, Bell's first alleged UCC violation has no merit and the trial court properly granted summary judgment in favor of GM Financial as to this alleged violation.

Bell's second alleged UCC violation claims GM Financial violated sections 400.9-614(1)(A) and 400.9-613(1)(E) because its pre-sale notice improperly states the date on which the repossessed collateral would be sold. When collateral is not subject to public disposition, section 400.9-613(1)(E) requires a pre-sale notice to state "the time after which . . . disposition is to be made." *Id*. GM Financial's pre-sale notice at issue in this case, dated December 13, 2011, does precisely as the statute requires by stating, in pertinent part, that "[t]he vehicle will be sold at a private sale after 10 days from the date of this notice." Based on the plain and ordinary meaning of the statutory language, GM Financial complied with sections 400.9-614(1)(A) and 400.9-613(1)(E) in its pre-sale notice by clearly stating the time after which a private sale of

11

Bell's repossessed collateral would occur.[13]  *See id.*; section 400.9-614(1)(A); *Moore*, 609 S.W.3d at 696.

Furthermore, this Court previously approved of strikingly similar language stating the time after which collateral would be sold in *Levison*.  Under circumstances much like those of this case, the secured party in *Levison* sent a pre-sale notice to a pair of debtors after the repossession of a vehicle on which the debtors failed to make the required payments.  395 S.W.3d at 575.  The pre-sale notice informed the debtors that the repossessed vehicle would be sold at a private sale "ten (10) days from the date of this letter."  *Id*. at 585-86.  This Court held the language in the pre-sale notice was sufficient to satisfy the requirements of sections 400.9-614(1)(A) and 400.9-613(1)(E).  *Levison*, 395 S.W.3d at 585-86.  The language in GM Financial's pre-sale notice stating "[t]he vehicle will be sold at a private sale after 10 days from the date of this notice" tracks closely with the language approved by this Court in *Levison*.  *See id*.

Based on the foregoing, we find the language in GM Financial's pre-sale notice in this case sufficiently states the time after which a private sale would occur as required by sections 400.9-614(1)(A) and 400.9-613(1)(E).  Accordingly, Bell's second alleged UCC violation has no merit and the trial court erred in granting summary judgment in her favor as to this alleged violation.

---

[13] GM Financial's pre-sale notice did not precisely track the language provided in section 400.9-614(3), referred to as the "Safe-Harbor Form," which sets forth a form of notification providing sufficient information to satisfy the notice requirements of section 400.9-614(1).  *See* section 400.9-614(3); *Levison*, 395 S.W.3d at 583.  Specifically, as Bell points out on appeal, GM Financial's pre-sale notice omits the word "sometime," which is included in the language of section 400.9-614(3).  *See id*. ("[w]e will sell (describe collateral) at a private sale *sometime* after (date)") (emphasis omitted and added).  However, the language set forth in section 400.9-614(3) is optional and "[a] particular phrasing of the notification is not required."  Section 400.9-614(2); *Levison*, 395 S.W.3d at 583, 586.  Despite this, "we note that parties who fail to use the Safe[-]Harbor Form do so at their peril."  *Levison*, 395 S.W.3d at 587.

**b.** **The Third Alleged UCC Violation in Bell's Motion for Summary Judgment**

Section 400.9-614(1)(B) requires a secured party's pre-sale notice to provide "[a] description of any liability for a deficiency of the person to which the notification is sent." *Id*. Bell's third alleged UCC violation in her motion for summary judgment argues GM Financial fails to meet the requirements of 400.9-614(1)(B) in its pre-sale notice. GM Financial's pre-sale notice states, in relevant part:

> The money from the sale of this vehicle, less any expenses incurred by [GM Financial], may reduce or increase the amount you owe. You will be required to pay [GM Financial] the difference if the vehicle sells, including expenses, for less than the amount you owe. If the vehicle sells, including expenses, for more than the amount you owe, you will receive a refund, unless it is necessary for [GM Financial] to forward this money to another party.

When analyzing whether improper notice was given under the statutory provisions of the UCC, whether the notice was "reasonable" is a common touchstone. *See* section 400.9-611(b); *Mancuso*, 254 S.W.3d at 94. Whether a pre-sale notice is reasonable in its content under section 400.9-611(b) can be assessed in terms of whether an allegedly misleading statement within the notice undermines the purpose of the notice requirements. *Mancuso*, 254 S.W.3d at 94-95. The purpose of the notice requirements of section 400.9-614 is to inform the debtor as to the details of the sale of the repossessed collateral, thereby allowing the debtor to take appropriate action to protect her interests. *Levison*, 395 S.W.3d at 583; *Mancuso*, 254 S.W.3d at 95. Furthermore, proper notice gives the debtor an opportunity to satisfy the debt and reclaim the collateral, find another purchaser, or verify that the sale is conducted in a commercially reasonable manner. *Mancuso*, 254 S.W.3d at 95.

Bell specifically takes issue with the language in GM Financial's pre-sale notice which states the money from the sale of the collateral, less any expenses incurred by GM Financial, may increase the amount owed. Bell claims this language is "misleading" and makes the notice

unreasonable in violation of the UCC "because money from the sale will always reduce the amount owed and cannot increase it." However, GM Financial's choice of language in its pre-sale notice does not undermine the purpose of the notice requirement by discouraging the debtor from acting to protect her interests. *See id*. If anything, the language in GM Financial's pre-sale notice might *encourage* the debtor to protect her interests by satisfying the debt and reclaiming the collateral, finding a purchaser, or verifying the sale is commercially reasonable in order to avoid a potential scenario where GM Financial's expenses would exceed the sale price and increase the amount owed. *See id*. Accordingly, GM Financial's statement in its pre-sale notice that the money from the sale of the vehicle, less any expenses incurred by GM Financial, may potentially increase the amount owed does not render the pre-sale notice unreasonable in content.[14] *See id*.; *see also* section 400.9-611(b).

Furthermore, other than the statement at issue regarding the potential increase in the amount owed, the remaining language of the pre-sale notice tracks closely with the statutorily sufficient language provided in section 400.9-614(3) (referred to as the "Safe-Harbor Form") and Bell makes no argument otherwise. *See id*.; section 400.9-614, comment 3; *Levison*, 395 S.W.3d at 583, 586 (similarly finding). Accordingly, GM Financial sufficiently complied with section 400.9-614(1)(B) by providing "[a] description of any liability for a deficiency of the person to which the notification is sent" in its pre-sale notice. *See id*.; *cf. States Resources Corp. v. Gregory*, 339 S.W.3d 591, 593, 598 (Mo. App. S.D. 2011) (holding a notice insufficient where it

---

[14] We fundamentally disagree with Bell's characterization of the language in GM Financial's pre-sale notice as "misleading." In support of this characterization, Bell repeatedly argues that "money from the sale will always reduce the amount owed and cannot increase it," a statement that misconstrues the exact language of GM Financial's pre-sale notice. The pre-sale notice states, in pertinent part, that "money from the sale of this vehicle, *less any expenses incurred by [GM Financial]*, may reduce or increase the amount you owe." (emphasis added). GM Financial claims this language is accurate because "the expenses of selling a repossessed vehicle sometimes exceed the sale price, thus increasing the amount the debtor owes." Bell makes no argument on appeal that the contested language, when viewed in its full context as a mathematical formula, is somehow misleading or inaccurate.

merely stated that "[t]he proceeds from the sale will be applied to your loan"); *In re Downing*, 286 B.R. 900, 904-05 (Bankr. W.D. Mo. 2002) (finding a notice insufficient where it failed to inform the debtor of any potential liability for a deficiency).

Based on the foregoing, the trial court erred in granting summary judgment in Bell's favor as to her third alleged UCC violation.

### c. The Fourth Alleged UCC Violation in Bell's Motion for Summary Judgment

Bell's fourth alleged UCC violation in her motion for summary judgment argues GM Financial violated various sections of the UCC "because its pre[-]sale and post-sale notices include[] interest barred by [section] 408.553." More specifically, Bell alleges section 408.553 prohibits "post-default, pre[-]judgment interest" and the inclusion of these interest charges unreasonably overstates the redemption amount in GM Financial's pre-sale notice and the values in its post-sale notice.

The version of section 408.533 applicable in this case provides:

> Upon default the lender shall be entitled to recover no more than the amount which the borrower would have been required to pay upon prepayment of the obligation on the date of final judgment together with interest thereafter at the simple interest equivalent of the rate provided in the contract.

*Id*. In *MM Finance, LLC v. Rose*, 649 S.W.3d 29, 33-34 (Mo. App. W.D. 2022), the Western District recently addressed the issue of whether this version of section 408.553 prohibits the collection of post-default, pre-judgment interest, and its holding is dispositive to our analysis in this case.

*Rose* involved an appeal by a lender from a judgment entered in its favor after a borrower defaulted on a promissory note by failing to make the required payments. 649 S.W.3d at 31. The lender argued on appeal that the trial court erred in failing to award, *inter alia*, pre-judgment interest at the contractual rate specified in the promissory note. *Id*. at 32. The Court in *Rose*

15

analyzed whether there was a statutory limit on pre-judgment interest and held, based on the plain language of section 408.553 and related statutes, that "[n]othing in . . . [section] 408.553 prohibits a lender from collecting post-default, pre[-]judgment interest." *Rose*, 649 S.W.3d at 33. The underlying case was remanded with instructions to, *inter alia*, award the lender post-default, pre-judgment interest at the rate specified in the promissory note executed by the parties. *Id.* at 35.

Based on the aforementioned holding in *Rose*, GM Financial is not barred by section 408.553 from collecting post-default, pre-judgment interest and does not, as Bell alleges, violate any provisions of the UCC by including those interest charges in its pre-sale and post-sale notices.[15] *See id.*; *Rose*, 649 S.W.3d at 33. The trial court properly granted summary judgment in favor of GM Financial as to Bell's fourth alleged UCC violation.

### d. The Fifth and Sixth Alleged UCC Violations in Bell's Motion for Summary Judgment

The final two alleged UCC violations in Bell's motion for summary judgment claim GM Financial's pre-sale notice violates section 400.9-611(b) by overstating the repossession expenses as part of the dollar amount required for redemption of the vehicle and by failing to authenticate the notice.

Section 400.9-611(b) requires a secured party to provide a debtor with "reasonable authenticated notification of disposition." *Id.*; *see also* section 400.9-611(c)(1). As outlined in Section II.B.2.b of this opinion, we can assess whether a pre-sale notice is "reasonable" under section 400.9-611(b) by analyzing whether the alleged violation undermines the purpose of the

---

[15] Bell requests this Court to follow *Hollins v. Capital Solutions Investments I, Inc.*, 477 S.W.3d 19 (Mo. App. E.D. 2015), specifically citing to a statement in the concurring opinion regarding how section 408.553 "indicates interest . . . does not begin to accrue until the date of a 'final judgment.'" 477 S.W.3d at 29. However, this statement is "dicta in a concurring opinion and thus ha[s] no binding affect," and we therefore decline to treat it as precedential authority. *See Rose*, 649 S.W.3d at 33 n.2.

notice requirements. *See id*.; *Mancuso*, 254 S.W.3d at 94-95. The notice requirements serve to inform the debtor as to the details of the sale of the repossessed collateral, thereby allowing the debtor to take appropriate action to protect her interests. *Levison*, 395 S.W.3d at 583; *Mancuso*, 254 S.W.3d at 95.

Bell's fifth alleged UCC violation claims GM Financial's pre-sale notice is unreasonable because it overstates the repossession expenses by providing an estimate of $650 when the actual expenses totaled $557.79, an overstatement of $92.21. When viewed in light of the $14,507.28 amount to redeem provided by GM Financial in the pre-sale notice, the overstated repossession expenses represent less than one percent of the total redemption amount. Such a minuscule difference in the total amount required to redeem the collateral would not serve to discourage a debtor from exercising her redemption rights and protecting her interests. *See Mancuso*, 254 S.W.3d at 94-95. Accordingly, the repossession expenses provided by GM Financial in its pre-sale notice do not make the notice unreasonable, and the trial court properly granted summary judgment in favor of GM Financial on Bell's fifth alleged UCC violation.

As to Bell's claim in her sixth and final alleged UCC violation that the pre-sale notice in this case is not properly authenticated, section 400.9-102(a)(7) defines "[a]uthenticate" as either: "(A) [t]o sign; or (B) [w]ith the present intent to adopt or accept a record, to attach to or logically associate with the record an electronic sound, symbol or process." *See id*. (emphasis omitted). In this case, GM Financial's pre-sale notice is printed on letterhead inscribed with the "AmeriCredit"[16] symbol and includes an address and contact phone number at the bottom of both pages. Under the circumstances of this case, we find GM Financial's placement of the pre-

---

[16] It is undisputed on appeal that the underlying entity AmeriCredit Financial Services, Inc. was doing business under a properly registered fictitious name as GM Financial at all relevant times throughout this case. *See* section 417.200.

sale notice on its letterhead and the inclusion of an address and phone number sufficiently indicates GM Financial's intent to adopt the record. *See id.* Bell's argument that GM Financial did not properly authenticate its pre-sale notice therefore has no merit, and the trial court correctly granted summary judgment in favor of GM Financial as to Bell's sixth alleged UCC violation.

**3. Conclusion as to the UCC Violations Alleged in Bell's Motion for Summary Judgment**

All six of the alleged UCC violations in Bell's motion for summary judgment are without merit. Accordingly, we hold the trial court erred in granting summary judgment in Bell's favor on both her Class Action Counterclaim and GM Financial's Deficiency Claim. GM Financial's second, third, and fourth points on appeal are granted.

## III. CONCLUSION

The trial court's partial grant of summary judgment entered in favor of Bell on both her Class Action Counterclaim and GM Financial's Deficiency Claim is reversed, and we remand to the trial court for further proceedings in accordance with this opinion.

ROBERT M. CLAYTON III, Judge

John P. Torbitzky, P.J., and
Michael S. Wright, J., concur.

18